OAKLAND COUNTY v CITY OF DETROIT

1. MUNICIPAL CORPORATIONS—SEWERS—SEWER RATES—CONSTITU-
   TIONAL LAW—STATUTES.

   A city may extend its sewer service beyond the city limits and
   may collect charges for the cost of such service, including a fair
   rate of return on the value of the property devoted to providing
   the sewer service (Const 1963, art 7, § 24, MCLA 117.4f[4];
   MSA 5.2079[4]).

2. MUNICIPAL CORPORATIONS—SEWERS—SEWER RATES—REASONABLE-
   NESS.

   The rate charged by a city for its sewer service is presumed to be
   reasonable in the absence of a showing that the rate is capri-
   cious, arbitrary, or unreasonable.

3. CONSTITUTIONAL LAW—EQUAL PROTECTION—LEGISLATIVE CLASSIFI-
   CATIONS—REASONABLENESS.

   The Equal Protection Clause of the Fourteenth Amendment does
   not take from the state the power to classify in the adoption of
   police laws but allows the exercise of discretion in that regard,
   avoiding what is done only when it is without any reasonable
   basis and is therefore purely arbitrary (US Const, Am XIV).

4. CONSTITUTIONAL LAW—EQUAL PROTECTION—CLASSIFICATIONS.

   A classification having some reasonable basis does not offend

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 7] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
   Political Subdivisions § 568.
[2] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
   Political Subdivisions § 574.
[3, 4] 16 Am Jur 2d, Constitutional Law § 506.
[5] 16 Am Jur 2d, Constitutional Law § 512.
[6] 16 Am Jur 2d, Constitutional Law § 174.
[7] Discrimination between property within and that outside munici-
   pality or other governmental district as to rates for use of sewers.
   4 ALR2d 610.
[8] 5 Am Jur 2d, Appeal and Error § 545.
[9] 30 Am Jur 2d, Evidence §§ 1040, 1069, 1070, 1072.
[10] 4 Am Jur 2d, Appeal and Error § 521.
   5 Am Jur 2d, Appeal and Error § 738.

against the Equal Protection Clause merely because it is not made with mathematical nicety or because in practice it results in some inequality (US Const, Am XIV).

5. CONSTITUTIONAL LAW—CLASSIFICATIONS—STATE OF FACTS.

Any state of facts which reasonably can be conceived that would sustain a classification must be assumed to have existed at the time such a law was enacted, where such classification is called into question.

6. CONSTITUTIONAL LAW—CLASSIFICATIONS—ARBITRARINESS—BURDEN OF PROOF.

One who assails a classification carries the burden of showing that the classification does not rest upon any reasonable basis, but is essentially arbitrary.

7. MUNICIPAL CORPORATIONS—SEWERS—SEWER RATES—MUNICIPAL CUSTOMERS—SUBURBAN CUSTOMERS.

A city sewer system is justified in charging a higher rate to customers located outside the city than it charges to customers within the city because the city incurs costs related to operation of the sewage treatment system which the suburbs do not, such as police and fire protection for the treatment plant, the risk of tort liability arising from the system's operation, and the loss of tax base resulting from devoting land to a tax-free utility, and because the suburban areas served by the sewer may have an enhancement in valuations which the city can not tax.

8. APPEAL AND ERROR—APPELLATE COURTS—FUNCTION.

The function of an appellate court is restricted to the test of questions which, in the court below, have been raised and saved for review, and a claim not so raised should not be considered by an appellate court, even if the claim may be of some merit and even if it is a constitutional question.

9. EVIDENCE—PAROL EVIDENCE—CONTRACTS—ADMISSIBILITY.

The question in a case involving parol evidence is whether the proffered parol evidence is inconsistent with the written language of the contract; if there is no inconsistency, the parol evidence is admissible.

10. EVIDENCE—ERRONEOUS EXCLUSION—REVERSAL.

The erroneous exclusion of evidence does not require reversal unless it has caused a denial of substantial justice.

Appeal from Iosco, Allan C. Miller, J. Submitted

December 7, 1977, at Lansing. (Docket No. 30710.) Decided February 7, 1978. Leave to appeal applied for.

Complaint by the County of Oakland against the City of Detroit, its Board of Water Commissioners, and the Detroit Metro Water Department challenging the rates charged for sewage treatment to those customers located outside the City of Detroit and in Oakland County, and for breach of contract. Judgment for defendant. Plaintiff appeals. Remanded.

*Fraser, Trebilcock, Davis & Foster* (by *Michael H. Perry) (Robert H. Fredericks, II,* of counsel), for plaintiff.

*Dyer, Meek, Ruegsegger & Bullard* (by *Richard J. McClear),* for defendant.

Before: R. B. Burns, P. J., and Allen and R. M. Maher, JJ.

Per Curiam. The County of Oakland appeals the trial court's determination that the sewage treatment costs adopted by the City of Detroit and charged Oakland County residents are fair, reasonable and properly related to the costs incurred for providing the services received. The court ruled that the City of Detroit could charge its resident customers $.75 per 1,000 cubic feet of sewage while charging suburban customers $.89 per 1,000 cubic feet. It found the $.14 differential a reasonable 7% rate of return on investment.

Plaintiff Oakland County alleges that defendant city has no right to charge suburban customers more for sewage treatment than city residents are charged; and that the City of Detroit, by charging more to its suburban customers, has breached

contracts with three sewer districts in Oakland County. The contracts call for an assessment of "reasonable rates".

The Michigan Constitution, Const 1963, art 7, § 24, allows a city to extend its sewer treatment lines beyond city limits. MCLA 117.4f(4); MSA 5.2079(4), part of the home rule act, allows a city to provide in its charter for the extension of sewer service beyond city limits and to collect charges for the cost of such service. A part of the charge a city collects may include a fair rate of return on the value of the property devoted to providing sewer service.

A city's sewage rate is presumed to be reasonable in the absence of a showing that it is capricious, arbitrary, or unreasonable. *Detroit v Highland Park,* 326 Mich 78; 39 NW2d 325 (1949).

At issue in the instant case is the classification made by the City of Detroit by which nonresidents, unlike city residents, are charged an extra rate of return for sewage treatment. Plaintiff argues that the classification is unfair and that the extra charge constitutes an unreasonable rate.

The standards to be applied in evaluating the reasonableness of a municipality's system of classification are summarized in *Land v Grandville,* 2 Mich App 681; 141 NW2d 370 (1966).

" '1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in

such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.' " 2 Mich App at 690.

Plaintiff contends that since it costs the same to treat the city's and the suburbs' sewage, the sewage rate should be the same for both and that since the rate is not the same the classification is unjust.

Costs attributable solely to sewage treatment and costs associated with the financing of the sewage treatment system are the same for city and suburbs. But to focus on these costs alone is to ignore other costs related to sewage treatment which the city incurs while the suburbs do not. The city supplies police and fire protection for the treatment plant. It faces the risk of tort liability arising out of the operation of the system. Because the water department pays no taxes, the city loses a large amount from its tax base. The suburbs, however, receive sewage treatment without having to devote any of their land to a tax free utility.

City areas with connection to the sewage treatment system have higher valuations than areas which do not have the utility. The city levies and collects taxes on this enhanced value. Suburban areas, not taxed by the city, receive the same benefits of enhanced value but bear no part of the additional burden. See *Faxe v Grandview,* 48 Wash 2d 342; 294 P2d 402 (1956), *Town of Terrel Hills v San Antonio,* 318 SW2d 85 (Tex Civ App, 1958).

Plaintiff suggests that when city taxpayers are not liable for the utility's revenue bonds, as is the

case here, no rate difference should be allowed. That city taxpayers are not directly liable for the bonds is of little moment. Plaintiff's argument ignores the above mentioned indirect costs that the city residents must pay but from which their suburban counterparts are free. Detroit taxpayers must pay for fire and police protection of the system and must compensate for the utility's tax exemption by paying higher taxes.

Hence, the rate difference is justified. One could reasonably view the extra amount which the Oakland County residents pay directly as tantamount to the sums paid, indirectly, by City of Detroit residents.

Oakland County's objections based on the Revenue Bond Act, MCLA 141.101 *et seq.;* MSA 5.2731 *et seq.,* and on the Federal Water Pollution Control Act, 33 USCA 1251 *et seq.,* are not properly before this Court. Plaintiff failed to raise the issues at trial and is thus precluded from asserting it here. The function of an appellate court is restricted to the test of questions which, in the court below, have been raised and saved for review. *Swartz v Laurencelle,* 371 Mich 153; 123 NW2d 244 (1963). This is true even if the claim may be of some merit and even if it is a constitutional question. *Falk v Macomb County Civil Service Commission,* 57 Mich App 134; 225 NW2d 713 (1974).

In any event, we would reject plaintiff's claim. The revenue bond act contains no limitation or directive as to what methods of developing rates may or shall be used by the governing body of the borrower. To determine what rates and charges can lawfully be fixed by a city, this Court defers to the home rule ʿact, MCLA 117.4(f)(4); MSA 5.2079(4). This section of the act specifically provides that a municipality may fix "charges" for its

sewage service and that such may include a fair rate of return.

As a substantive matter, the Federal Water Pollution Control Act does not apply in the instant case. Oakland County contends it is paying more than its proportionate share of the treatment costs, as the statute requires. Since the Water Pollution Control Act does not define treatment costs, we again defer to state law. In *Meridian Twp v East Lansing,* 342 Mich 734; 71 NW2d 234 (1955), the Court determined that "[p]rudent business administration requires that the item of costs incurred include, among others, operating expenses, upkeep of the property, and *a fair return on the value thereof".* 342 Mich at 751. (Emphasis supplied.)

During trial plaintiff attempted to introduce its proposed exhibit number 22 which, it is alleged, demonstrated that the transportation rate for providing sewage disposal service was estimated on a "cost" basis. Plaintiff contends that the proposed exhibit would have helped the trial court in its efforts to construe the term "reasonable in relation to costs" in the contracts. The trial court ruled that the evidence arose out of negotiations and that it attempted to give a specific meaning to the term "reasonable" which was not explained in the contract and would, therefore, be varying the terms of the contract and contrary to the parol evidence rule.

Defendant city's contention, that the issue has not been properly preserved for review, is without merit. Plaintiff made an offer of proof sufficient to comply with GCR 1963, 604. See *Hes v Haviland Products Co,* 6 Mich App 163; 148 NW2d 509 (1967), *Schwartz v Davis Mfg Co,* 32 Mich App 451; 189 NW2d 1 (1971).

In *Goodwin, Inc v Orson E Coe Pontiac, Inc,* 392 Mich 195, 204; 220 NW2d 664 (1974), the Supreme Court stated the parol evidence rule in these terms: "Where a contract is clear and unambiguous, parol evidence of negotiations cannot be admitted to vary the contract." The Court noted several exceptions to the rule, one of which allowed the admission of parol evidence to explain ambiguous language in the contract. The Court propounded the following rules concerning clarification of ambiguous terms:

"1) Where ambiguity may exist in a contract, extrinsic evidence is admissible to prove the existence of ambiguity.

"2) Where ambiguity may exist in a contract, extrinsic evidence is admissible to indicate the actual intent of the parties.

"3) Where ambiguity exists in a contract, extrinsic evidence is admissible to indicate the actual intent of the parties as an aid in the construction of the contract." 392 Mich 209–210.

In *Union Oil Co v Newton,* 397 Mich 486; 245 NW2d 11 (1976), however, the Court, in a perceptible shift, adopted a modified interpretation of the parol evidence rule. *Newton* noted that the real question in a case involving parol evidence is whether or not the proffered parol evidence "is inconsistent with the written language. If there is no inconsistency, the parol evidence is admissible." 397 Mich at 488. In support of this, the Court cited Restatement 2d, Contracts, § 239(1), which reads, "A binding integrated agreement discharges prior agreements to the extent that it is *inconsistent* with them". 397 Mich at 488, n 1. (Emphasis in original.)

In *Michigan National Bank v Holland-Dozier-*

*Holland Sound Studios,* 73 Mich App 12; 250 NW2d 532 (1976), a panel of this Court held, and we believe correctly, that *Newton* had surreptitiously reversed *Goodwin.* The Court interpreted the word "inconsistent" to be synonymous with "contradictory". Using the standards articulated in *Newton* and *Holland-Dozier-Holland,* we do not find the exhibit offered by plaintiff to be inconsistent with or contradictory to the written language of the contract, *viz.,* "reasonable in relation to the cost".

Rather, the exhibit may, perhaps, explain what "reasonable in relation to the cost" means. There is clearly a misunderstanding about this term's definition. The basic issue in the case is whether the parties intended or knew that a rate of return was to be a cost for which the suburbs were liable. In cases of misunderstanding, the court must inquire into the meaning that each party attached to the term in question.

GCR 1963, 529 provides that if the trial judge erroneously excludes evidence this will not require reversal unless it has caused a denial of substantial justice. The evidence here excluded would have helped the court interpret the contract in question. The evidence went to the heart of the issue before the court. Since it might have altered the outcome of the case, its exclusion was reversible error.

Accordingly, the cause is remanded to the trial court for its consideration of the document in question. Should the court still find that a rate of return can be charged despite the contract, such a rate of return is, as a matter of law, proper.