JOHN A HALL CONSTRUCTION COMPANY v BOONE & DARR, INC

Docket No. 78-3900. Submitted October 9, 1980, at Detroit.—Decided January 21, 1981. Leave to appeal applied for.

Plaintiff, John A. Hall Construction Company (Hall), became general contractor for the construction of Ypsilanti Public High School. Hall furnished a labor and material bond which named it as principal and United States Fidelity & Guaranty Company (USF&G) as surety. JS&J Construction Company, a wholly-owned subsidiary of Hall, became the subcontractor responsible for supplying mechanical and electrical labor and materials. A. F. Smith & Son, Inc. (Smith) contracted with JS&J to do the electrical work and Boone & Darr, Inc. (B&D) contracted to perform the mechanical part of the work. Disputes arose during the performance of the contracts and Hall and JS&J filed suit in Washtenaw Circuit Court against Smith and B&D. Smith and B&D filed counterclaims against Hall and JS&J and a third-party complaint against USF&G seeking recovery on the bond secured by USF&G. Hall and USF&G filed motions for summary judgment on the counterclaims and third-party complaint. Hall also requested voluntary dismissal of its claims against Smith and B&D. The court, Patrick J. Conlin, J., granted both of Hall's requests, finding that Hall and JS&J were separate and distinct corporations and that there was no direct contractual relationship between Hall and the defendants, Smith and B&D. USF&G's motion for summary judgment was denied, the court finding that a question of fact remained as to whether adequate notice had been given to USF&G to bind it under the terms of the bonding statute. At trial, the court concluded that JS&J was merely a "shell" corporation directed and controlled by Hall and Hall was reinstated as a party-plaintiff. Hall then filed a motion for reconsideration of the court's order for reinstatement. The motion was granted

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur 2d, Contractors' Bonds § 8.
[2] 17 Am Jur 2d, Contractors' Bonds § 16 et seq.
[3] 17 Am Jur 2d, Contractors' Bonds § 53.
[4] 5 Am Jur 2d, Appeal and Error § 545.

and Hall was again dismissed as a party to the action. USF&G moved for dismissal or judgment in its favor on the ground that defendants had failed to comply with the statutory requirements for suit on a performance bond. The court found JS&J's claims to be without merit with the exception of a $2,614.41 claim against B&D. In addition, the court also found that B&D was entitled to judgment against JS&J for $155,573.36, and that Smith was entitled to judgment against JS&J for $72,957.32. Recovery against Hall was precluded on the ground that there was no direct contractual relationship between the defendants and Hall because Hall and JS&J were separate and individual corporations. The action by B&D and Smith against USF&G was dismissed, the court finding that B&D and Smith failed to comply with the notice requirements of the bonding statute. Defendants appeal from the denial of their right to recover on the payment bond issued by Hall and secured by USF&G. *Held:*

The control exercised by John Hall, as president of both Hall and JS&J, the existence of a unique backcharge arrangement instituted by John Hall in his dual capacity, and the fact that Hall did not require JS&J to provide a bond to protect the defendants leads to the conclusion that, for the purposes of the bonding statute, JS&J was merely a "shell" corporation controlled by Hall and that, under the circumstances, defendants had established a direct contractual relationship with Hall. By having established a direct contractual relationship with the general contractor, there was no need for the defendants to have complied with the notice requirements of the bonding statute. Defendants are entitled to recover on the bond.

Reversed and remanded.

1. SURETYSHIP AND GUARANTEE — CONTRACTS — BONDS — CONTRACTORS AND SUBCONTRACTORS — DIRECT CONTRACTUAL RELATIONSHIP — STATUTES.

A party under contract to furnish labor or materials to a subcontractor may, for purposes of the bonding statute, establish a direct contractual relationship between himself or itself and the general contractor by showing that the subcontractor is merely a "shell" corporation controlled by the general contractor (MCL 129.207; MSA 5.2321[7]).

2. SURETYSHIP AND GUARANTEE — CONTRACTS — BONDS — SUBCONTRACTORS — PAYMENT BONDS — RECOVERY — STATUTES.

A party who has furnished labor or materials in the performance of a contract with a subcontractor may sue on a payment bond furnished by the general contractor to collect amounts ·due

from the subcontractor by establishing 1) a direct contractual relationship with the general contractor, or 2) by fulfilling the notice requirements of the bonding statute (MCL 129.207; MSA 5.2321[7]).

3. Suretyship and Guarantee — Bonds — Sureties — Bond Terms.
    A surety may obligate itself by bond terms more restrictive than required under a bonding statute.

4. Appeal — Scope of Review.
    The function of an appellate court is restricted to the test of questions which, in the court below, have been raised and saved for review.

*Griffin, Cochrane & Marshall,* for John A. Hall Construction Company and United States Fidelity & Guaranty Company.

*Federlein & Grylls, P.C.,* for Boone & Darr, Inc., and A. F. Smith & Son, Inc.

Before: D. C. Riley, P.J., and N. J. Kaufman and MacKenzie, JJ.

N. J. Kaufman, J. Defendants, A. F. Smith & Son, Inc. (Smith) and Boone & Darr, Inc. (B&D), appeal from a decision of the Washtenaw County Circuit Court rendered April 18, 1978, which denied their right to recover on a payment bond furnished by plaintiff, John A. Hall Construction Company (Hall) and secured by United States Fidelity & Guaranty Co. (USF&G).

On March 19, 1971, Hall submitted its successful bid as general contractor for the construction of Ypsilanti Public High School. Pursuant to the terms of the construction contract, Hall provided a labor and material bond, with itself as principal and USF&G as surety. Hall then entered into a subcontract agreement with JS&J Construction Co. (JS&J) to supply the mechanical and electrical labor and materials.

JS&J was a wholly-owned subsidiary of Hall, John A. Hall being president of both corporations. JS&J entered into a contract with A. F. Smith & Son, Inc. (Smith) to supply electrical work for the project and into another contract with Boone & Darr, Inc. (B&D) for the mechanical portion of the contract. Performance was secured with bonds issued by Seaboard Surety Company for Smith and Fidelity & Casualty Company of New York for B& D. During the course of construction, invoices were rendered by Smith and B&D to JS&J and payments were made by JS&J.

In the latter stages of construction, disputes arose among the parties which resulted in the filing of suit by Hall and JS&J against Smith and B&D. Counterclaims were filed by defendants against Hall and JS&J. A third-party complaint was filed against USF&G seeking recovery on the bond secured by them.

On May 22, 1975, motions for summary judgments were filed by Hall and USF&G. Hall's motion was based upon the absence of any contractual relationship between it and the defendants, founded on the allegation that Hall and JS&J were separate and distinct corporations. Hall also requested voluntary dismissal of its claims against defendants. Both requests were granted and an order dismissing Hall's action was filed October 2, 1975. USF&G's motion for summary judgment was denied by the same order. In its opinion, the lower court concluded that since defendants alleged adequate notice under MCL 129.207; MSA 5.2321(7), and USF&G failed to controvert this allegation, a question of fact remained, thus precluding summary judgment.

Trial commenced October 1, 1975, and, after extensive inquiry, the circuit court concluded that

Hall directed and controlled the entire construction project and that JS&J was merely a "shell" corporation. Accordingly, on January 23, 1976, Hall Construction was reinstated as a party-plaintiff.

Further proofs were submitted and Hall filed a motion for reconsideration of the court's order for reinstatement. This motion was granted and, on May 31, 1977, Hall was again dismissed as a party to the action.

On August 22, 1977, USF&G moved for dismissal or judgment in its favor on the ground that defendants had failed to establish compliance with MCL 129.207; MSA 5.2321(7). In an opinion rendered eight months later, the court found JS&J's claims against defendants to be without merit, except for a $2,614.41 claim against B&D. The court held that defendants were entitled to judgment on their counterclaims against JS&J for $155,573.36 (B&D) and $72,957.32 (Smith). The court found that the absence of a direct contractual relationship between defendants and Hall and the fact that Hall and JS&J were separate and individual corporations precluded defendants' recovery against Hall. The court further held that defendants' failure to comply with MCL 129.207; MSA 5.2321(7) foreclosed defendants' suit against USF&G, and that action was, therefore, dismissed. Defendants appeal from the circuit court's decision denying their right to recover on the payment bond furnished by Hall and secured by USF&G.

Defendants raise three issues, two of which have been properly preserved for appeal. Defendants first contend that they established a "direct contractual relationship" between themselves and Hall which would allow recovery on the payment bond.

The focus of this controversy is the language of MCL 129.207; MSA 5.2321(7). This section entitles a "claimant" who has furnished labor or material in the performance of the contract to sue "on the payment bond for the amount, or balance thereof, unpaid at the time of the institution of the civil action". Crucial to the present controversy, however, is that language of the section which reads in pertinent part:

"Sec. 7 * * * A claimant not having a direct contractual relationship with the principal contractor shall not have a right of action upon the payment bond unless (a) he has within 30 days after furnishing the first of such material or performing the first of such labor, served on the principal contractor a written notice, which shall inform the principal of the nature of the materials being furnished or to be furnished, or labor performed or to be performed and identifying the party contracting for such labor or materials and the site for the performance of such labor or the delivery of such materials, and (b) he has given written notice to the principal contractor and the governmental unit involved within 90 days from the date on which the claimant performed the last of the labor or furnished or supplied the last of the material for which the claim is made * * *. Each notice shall be served by mailing the same by certified mail * * *."

Defendants' first issue centers on that portion of the statute requiring a "direct contractual relationship with the principal contractor". The question is whether the defendants established a "direct contractual relationship" with Hall and are thereby entitled to the protection afforded by the statute.

In support of their position, defendants point to the intricate relationship between Hall and JS&J, noting that JS&J is a wholly-owned subsidiary of

Hall, John Hall was the sole shareholder of Hall and was the president of both corporations. The corporations had the same vice-president and identical boards of directors.

Additionally, defendants assert that the alleged JS&J representatives who were running the operation of the project were not from JS&J, but were from Hall. There was no performance or payment bond secured from JS&J by Hall.

It is clear to this Court that the proofs reveal two separate corporate entities controlled by one individual who had established adequate safeguards to shield the parent corporation but had secured no protection for parties dealing with the "shell" corporation. Although defendants admit to having only express contractual ties with the "shell" corporation, they claim that the owner and president of the parent corporation functioned in a dual capacity such that the two corporations should be regarded as one.

Guidance in interpreting the phrase, "direct contractual relationship" is provided by judicial interpretation of the Federal counterpart of the Michigan notice statute. The Miller Act, 40 USC 270a *et seq.,* provides a scheme similar to that set forth in MCL 129.201 *et seq.;* MSA 5.2321(1) *et seq.* Like § 7 of the Michigan statute, 40 USC 270b sets forth the notice requirements for recovery on the payment bond, providing:

"That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or

furnished or supplied the last of the material for which such claim is made * *. *."

In interpreting the foregoing statute, the Fifth Circuit Court of Appeals found a sufficient contractual relationship to allow recovery on the bond in a situation somewhat analogous to the case at bar. In *National Surety Corp v United States,* 378 F2d 294 (CA 5, 1967), an individual who controlled the general contracting corporation caused that corporation to assign the contract to another company also controlled by him. In concluding that a materialman who dealt solely with the assignee had a direct contractual relationship with the general contractor, the court stated:

"After a careful review of the record, we are convinced there is ample evidence to support the findings and the judgment of the district court. There are several reasons why International should be considered the same entity as Construction and thus a prime contractor, rather than a subcontractor, with regard to the application of the notice provision. First of all, Uhlhorn himself caused Construction to assign the FAA contract to International; this assignment, although made without the knowledge or consent of Surety, squarely placed International in the position of prime contractor. Furthermore, some applications for permits to import equipment or materials without duty purported that International was the general contractor. Moreover, various contracts with subcontractors executed by Uhlhorn refer to International as the 'general contractor'. Finally, stationery of both Construction and International was used interchangeably to make purchase orders with the name of one company blotted out and the name of the other substituted." 378 F2d 294, 295-296.

While the fact situation in the instant case is distinguishable from *National Surety Corp, supra,* this Court concludes that, given the manner in

which the subject corporation functioned, the same rationale should apply. The court's conclusion that "William B. Uhlhorn operated in the form of Construction or International whenever it suited him" corresponds to our conclusion in this action that John Hall was personally running the entire operation, either as Hall Construction or as JS&J.

Hall and JS&J began this action as joint-plaintiffs, with Hall alleging a right of recovery based on its status as a third-party beneficiary to the contracts between defendants and JS&J. This right to recover was on claimed backcharges which, according to testimony of John Hall, had not been billed to Smith or B&D prior to the institution of this suit. In contrast, the contract balances claimed by defendants Smith and B&D were balances invoiced long before initiation of suit. The similarity between the backcharges and the claimed contract balances of B&D and Smith are evident:

| CONTRACT BALANCES DUE | | CLAIMED BACKCHARGES Hall—JS&J |
|---|---|---|
| B&D | $155,187.77 | $140,623.76 |
| Smith | 72,957.52 | 70,540.54 |
| | $228,145.29 | $211,164.30 |

Subsequently, in his dual capacity as president of both corporations, John Hall executed an agreement, which was admitted into evidence at trial, whereby backcharges of $215,937.01 were accepted by JS&J and whereby JS&J released Hall from any further liability for claims by JS&J which might arise in connection with the Ypsilanti High School construction project. After this agreement was reached and Hall was subjected to counterclaims of defendants for unpaid contract balances, Hall moved to remove itself from the case and to voluntarily dismiss its plaintiff's complaint.

A final point which leads this Court to conclude that JS&J and Hall were one entity for purposes of the bonding statute is the absence of any payment bond between the two firms. While Hall was required by the Ypsilanti School Board to provide a payment and performance bond, no similar action was compelled as to JS&J. Although defendants knew of the separate corporate status of JS &J, their trial testimony indicated that reliance was placed upon the presence of John Hall as the controlling force behind both corporations.

The control exercised by John Hall over the two corporations, the unique backcharge arrangement instituted by Hall in his dual capacity, and the absence of a payment bond by JS&J to protect defendants mandates our conclusion that for the purposes of the bonding statute defendants had a direct contractual relationship with the general contractor, Hall. Therefore, the statute notice provisions were not applicable and defendants are entitled to collect against the payment bond.

As the second issue on appeal, defendants argue that "substantial compliance" with the notice requirements of MCL 129.207; MSA 5.2321(7) affords the subcontractor the right to proceed against the bonding company.

MCL 129.207; MSA 5.2321(7) requires that notices be sent to the principal contractor and the governmental unit, *infra*. Plaintiffs correctly argue on appeal that the statute requires a minimum of three notices: two notices to the principal contractor and one to the governmental unit. While the notices were not sent by certified mail, defendants established that Hall had actual knowledge of the nature of materials being furnished and labor to be performed by defendants. Arguably then, the 30-day notice requirement was satisfied by defen-

dants. The record indicates that defendants had supplied labor or materials or both through mid-August of 1973. On November 14, 1973, John Hall caused a letter to be sent to the project architect indicating the existence of litigation between defendants and plaintiffs. Defendants assert that this notice satisfied the 90-day requirement set forth in the statute. Plaintiffs do not contest the timeliness of the notice but argue that the governmental unit was not adequately informed. The facts disclose that defendants did not conform to the letter of the law set forth in MCL 129.207; MSA 5.2321(7) in providing notice. The question becomes whether their attempted compliance satisfies the statutory requirements.

The outcome of the foregoing question is controlled by *Charles W Anderson Co v Argonaut Ins Co,* 62 Mich App 650; 233 NW2d 691 (1975), *lv den* 395 Mich 815 (1975). In a split decision, this Court held that where a party fails to comply with either notice requirement of the statute, that party "shall not have a right of action upon the payment bond". 62 Mich App 650, 654. The Court concluded that "such explicit language leaves very little room for judicial construction". *Id.* In so holding, the plaintiffs' "substantial compliance" argument was dismissed by the Court. In a strong dissent, Judge BRENNAN argued that the majority's reliance on cases interpreting an entirely different statute was misplaced. Accordingly, he claimed the strict construction rationale of those decisions was inapplicable, given the most recent legislative mandate. Defendants place great weight upon Judge BRENNAN's analysis. This Court is not convinced that the dissenting position is correct. The statutory mandate compels specific notice within a certain time period. However, the rigid application

of the 90-day notice requirement works no injustice in the case at bar since defendants are entitled to recover on the basis of a direct contractual relationship with the principal contractor.

Finally, defendants argue that the notice requirements of MCL 129.207; MSA 5.2321(7) may be waived by an alteration of the principal contract. Review of the record and of the lower court's opinion indicates that this issue was not addressed in the proceedings below. While it is recognized that a surety may obligate itself by bond terms more restrictive than the statute, see *Hub Electric Co, Inc v Gust Construction Co, Inc,* 585 F2d 183 (CA 6, 1978), this Court concludes that review of this issue is not here appropriate. "The function of an appellate court is restricted to the test of questions which, in the court below, have been raised and saved for review." *Oakland County v Detroit,* 81 Mich App 308, 313; 265 NW2d 130 (1978), *lv den* 403 Mich 810 (1978). Again, however, we note that since there existed a direct contractual relationship between defendants and the general contractor, Hall, our resolution of this issue would not affect our disposition of this case.

Reversed and remanded for proceedings in conformity with this opinion.