ATLAS VALLEY GOLF AND COUNTRY CLUB, INC v VILLAGE OF
GOODRICH

Docket No. 193580. Submitted August 7, 1997, at Lansing. Decided December 12, 1997, at 9:25 A.M.

Atlas Valley Golf and Country Club, Inc., a country club and golf course located in Atlas Township, brought an action in the Genesee Circuit Court against the Village of Goodrich, challenging the defendant's practice of charging nonresident users of its sewer system a connection fee equal to 1.5 times the fee charged residents. The court, Robert M. Ransom, J., granted summary disposition in favor of the defendant with regard to both counts of the complaint, count I of which alleged violation of the constitutional guarantees of due process and equal protection and count II of which alleged that the defendant lacked the statutory authority to charge nonresident users a higher connection fee than resident users and that the fee charged nonresidents is unreasonable.

The Court of Appeals *held*:

1. The defendant was authorized by statute to fix and impose a connection charge and to charge nonresidents a higher fee than residents, provided the charge is reasonable and does not subsidize the resident users. The court's determinations that the defendant could impose a reasonable connection fee and could charge residents and nonresidents different rates must be affirmed.

2. MCL 46.174; MSA 5.2767(4), which requires just, equitable, and uniform rates, charges or assessments for improvements, facilities, or services, applies only to counties, not villages, and does not apply to this case.

3. A unit of local government that operates a sewer system may charge nonresident users higher rates as long as the difference represents the indirect costs that its residents pay. The higher rate must be reasonable in light of the indirect costs. The matter must be reversed to the extent that the court did not consider whether the magnitude of the differential is reasonable and must be remanded for a determination whether the magnitude of the differential is reasonable under the circumstances.

4. The defendant's method for calculating the connection fees does not violate the equal protection and due process guarantees.

The defendant's use of its table of unit factors for such purposes was not arbitrary or unreasonable.

Affirmed in part, reversed in part, and remanded.

1. MUNICIPAL CORPORATIONS — SEWAGE DISPOSAL SYSTEMS — OUTSIDE CORPORATE LIMITS.

A village may acquire, own, or operate public service facilities for supplying sewage disposal and may provide sewage disposal services outside its corporate limits in such amount as may be determined by the legislative body of the village (Const 1963, art 7, § 24).

2. MUNICIPAL CORPORATIONS — SEWAGE DISPOSAL SYSTEMS — SEWER CONNECTION FEES.

A village that has contracted to pay a county for sewer services, including the cost of construction and maintenance, with regard to a sewer constructed by the county under the County Public Improvement Act is authorized to impose a sewer connection charge as part of its authority to fix the rate for the services (MCL 46.175; MSA 5.2767[5]).

3. MUNICIPAL CORPORATIONS — SEWAGE DISPOSAL SYSTEMS — VILLAGES — RATES.

Villages have the general authority to own and operate a sewer system within and without their corporate limits and to furnish services to users within and without their corporate limits; they may fix the rate for such service, including connection charges, and may charge nonresident users a higher fee than resident users where the higher fee is reasonable, does not subsidize their residents' use of the system, and represents the indirect costs that their residents pay (MCL 46.175, 141.103[a],[b],[e], 141.104, 141.121; MSA 5.2767[5], 5.2733[a],[b],[e], 5.2734, 5.2751).

4. CONSTITUTIONAL LAW — EQUAL PROTECTION — VILLAGES — SEWAGE DISPOSAL SYSTEMS.

A village may rationally impose classifications upon the users of its sewer system without violating equal protection guarantees as long as it treats all users within a given class alike (Const 1963, art 1, § 2; US Const, Am XIV).

5. CONSTITUTIONAL LAW — DUE PROCESS — MUNICIPAL CORPORATIONS — ORDINANCES.

A two-fold test is employed in determining whether an ordinance comports with due process: first, the ordinance must be within the range of power conferred by the Legislature and, second, it must be reasonable; a rational relationship must exist between the municipality's exercise of police power and the public health,

safety, morals, or general welfare; an ordinance that is obviously enacted in the interest of public health, safety, and welfare is presumed to be valid and will be declared invalid only when it plainly appears that it does not tend, in any applicable degree, to promote those ends and the power to legislate has been exercised arbitrarily (Const 1963, art 1, § 17; US Const, Am XIV).

*Bellairs Dean Cooley Siler & Moulton, LLP* (by *John P. Siler*), for the plaintiff.

*Kohl, Secrest, Wardle, Lynch, Clark and Hampton* (by *Thomas P. McKenney*), for the defendant.

Before: CORRIGAN, C.J., and MARKEY and MARKMAN, JJ.

CORRIGAN, C.J. In this action challenging defendant's practice of charging nonresidents a sewer connection fee equal to 1.5 times the fee charged residents, plaintiff appeals by right from the orders granting defendant's motion for summary disposition regarding count I and count II of plaintiff's complaint under MCR 2.116(C)(10). We affirm in part, reverse in part, and remand for further proceedings regarding whether the additional amount that defendant charges nonresidents is reasonable.

Defendant Village of Goodrich charged plaintiff, the owner of a country club and golf course in neighboring Atlas Township, a $96,000 fee to connect its facilities to the sewer system financed by defendant. Genesee County constructed the sewer within the village limits and extended the sewer through Atlas Township in order to connect it to the existing county sewer mains. Atlas Township declined to participate in the project. Genesee County is the owner of the sewer system, but defendant is responsible for all

construction and operational costs under the terms of its contract with the county.

Defendant calculates connection charges using the method detailed in Village of Goodrich Ordinance No. 52-B. Defendant charges a nonresident such as plaintiff $6,000 a "unit" for each of the first two units of a connection and $3,000 for each additional unit or fraction thereof. This fee is 1.5 times that charged village residents. Defendant determines the number of units assigned to a sewer user using a table of unit factors, which establishes different unit factors for categories of users. The number of units defendant assigns to a country club is based on membership, with .10 units assigned for each member. In accordance with this method, defendant assigned plaintiff thirty units because plaintiff had 298 members at the time it connected to the sewer system.

Plaintiff initiated this action to challenge the validity of the connection fee. In count I of its complaint, plaintiff asserted that defendant's connection fee violates the constitutional guarantees of equal protection, Const 1963, art 1, § 2; US Const, Am XIV, and due process, Const 1963, art 1, § 17; US Const, Am XIV, because it is based on an arbitrary table of unit factors. In count II, plaintiff claimed that defendant lacked statutory authority to charge nonresident users a higher connection fee than resident users and that the fee defendant charges nonresidents is unreasonable. The parties eventually agreed that plaintiff would connect to the sewer without prejudice to its claims. Thereafter, they filed cross-motions for summary disposition under MCR 2.116(C)(10) on stipulated facts. The trial court granted defendant's motion regarding count II because it determined that defend-

ant had the authority to charge nonresidents a connection fee 1.5 times that charged residents. The court reasoned as follows:

> It's clear both in the Constitution and the statutory authority that villages have the authority to operate a sewage treatment facility both inside and outside of its corporate limits. And implicit in that is the power to prescribe fees for those services.
>
> It would be ludicrous to suggest that a municipality has the authority to provide the service but couldn't charge for rendering that service.
>
> The case of [*Plymouth* v *Detroit*, 423 Mich 106; 377 NW2d 689 (1985)] indicates that the municipality may charge a reasonable fee. Reasonableness is the standard that is to be applied in determining whether the fee schedule is appropriate or constitutional.
>
> So, the Court rejects the contention that the defendant does not have the authority to charge a reasonable fee.
>
> Further, the *Plymouth* case also stands for the proposition that within the context of reasonableness there may be a differentiation between the fee assessed to residents as opposed to the fee assessed to nonresidents.
>
> So, on the section issue, the defendant Village of Goodrich prevails.

The court denied the parties' respective motions regarding count I because the motions were premature.

Plaintiff renewed its motion for summary disposition regarding count I after further discovery. The trial court denied the motion and granted summary disposition in favor of defendant because plaintiff did not present evidence to overcome the presumption that defendant's use of the table of unit factors in determining connection fees was reasonable.

I

Plaintiff first argues that the trial court erroneously determined that defendant had statutory authority to charge nonresidents 1.5 times the connection fee charged residents. This Court reviews questions of law de novo. *In re Lafayette Towers*, 200 Mich App 269, 273; 503 NW2d 740 (1993). Villages, such as defendant, enjoy only those powers that the state grants them through constitutional provision or statute. *Sebewaing Industries, Inc v Village of Sebewaing*, 337 Mich 530, 543; 60 NW2d 444 (1953). Under Const 1963, art 7, § 24, a village may "acquire, own or operate" public service facilities for supplying sewage disposal. A village may also "provide sewage disposal services outside of its corporate limits in such amount as may be determined by the legislative body of the . . . village . . . ." Const 1963, art 7, § 24. However, this constitutional provision is not self-executing, but, rather, requires statutory implementation. *Sebewaing, supra* at 544.

Genesee County constructed the sewer involved in this case under the County Public Improvement Act, MCL 46.171 *et seq.*; MSA 5.2767(1) *et seq.* Under the act, defendant village contracted to pay the county for sewer services, including the cost of construction and maintenance. The act provides in pertinent part:

> The county agency and a unit of government may enter into agreements for a term up to but not exceeding 40 years whereby *the unit of government shall pay the county for the services* provided by any improvements and facilities authorized by this act, including the cost of construction and maintenance of the same, *from funds collected as rates, charges, or assessments from the users and beneficiaries of the improvements, facilities, and services, or from any other fund available which may be validly used*

*for such purposes. Any contracting unit of government
may raise the amounts required to be paid under such
agreements by collecting connection charges, and rates,
charges, or assessments from the users and beneficiaries
of the improvements, facilities, and services within that
unit of government, or by levy upon the taxable property of
any contracting unit of government having the power to
tax in accordance with the same procedure as provided
under the general tax laws of the state.* . . . The rates,
charges, or assessments for water, sewage, and sewage dis-
posal services may be fixed in accordance with the amount
of water used as measured by water meter readings or by
such other methods as may be deemed equitable. [MCL
46.175; MSA 5.2767(5) (emphasis added).]

Under the plain language of MCL 46.175; MSA
5.2767(5), defendant village may impose a connection
charge.

The Legislature also granted villages the general
authority to "purchase, acquire, construct, improve,
enlarge, extend or repair" a sewer, to "own, operate
and maintain the same, within or without its corpo-
rate limits," and to furnish the services to users
within and without its corporate limits. MCL 141.104;
MSA 5.2734, MCL 141.103(a), (b); MSA 5.2733(a),
(b).[1] A village is authorized to fix the "rate" for the
service. MCL 141.121; MSA 5.2751; *Seltzer v Sterling
Twp*, 371 Mich 214, 219-220; 123 NW2d 722 (1963).
For purposes of the statute, the term "rate" means
"the charges, fees, rentals, and rates that may be fixed
and imposed for the services, facilities, and commodi-
ties furnished by a public improvement." MCL

---

[1] A village may exercise its powers under the Revenue Bond Act, MCL
141.101 *et seq.*; MSA 5.2731 *et seq.*, notwithstanding that it does not actu-
ally issue bonds. MCL 141.104; MSA 5.2734; *Seltzer v Sterling Twp*, 371
Mich 214, 219; 123 NW2d 722 (1963).

141.103(e);    MSA 5.2733(e).    A connection charge clearly falls within the ambit of a village's authority to fix the rate for services. Defendant accordingly had the authority to fix and impose a connection charge under the circumstances of this case. The question is whether defendant may charge nonresidents a higher fee than residents. We hold that it may, provided that the charge is reasonable and does not subsidize resident users.

We reject plaintiff's contention that because MCL 46.174;    MSA 5.2767(4)    requires defendant to establish a uniform charge, defendant may not charge nonresidents a higher connection fee. The statute provides:

> When the county board of commissioners of a county has authorized and directed the establishment of any of the improvements, facilities, or services authorized by this act, the county agency shall establish just, equitable, and uniform rates, charges, or assessments to be paid to the county for the services rendered thereby. The complete and actual cost of improvements and financing thereof may be included in the amounts fixed for rates, charges, or assessments for services rendered by the county. Where the improvements or facilities are to be acquired, constructed, and financed pursuant to the provisions of [MCL 46.175a, 46.175b,      46.175c;      MSA    5.2767(5.1),      5.2767(5.2), 5.2767(5.3)],    the rates, charges, or assessments for services rendered by the improvements or facilities shall be set and thereafter changed in the amount and manner provided by contract between the county and the unit or units of government. [MCL 46.174;    MSA 5.2767(4).]

This statute does not require that defendant charge a uniform fee, because it only applies to counties, not villages such as defendant.

Michigan courts have previously upheld a municipality's practice of charging nonresidents higher rates for sewer services. In *Oakland Co v Detroit*, 81 Mich App 308; 265 NW2d 130 (1978), this Court considered a challenge to the city's practice of charging nonresidents a rate fourteen cents higher than it charged residents for sewer services. This Court observed that the Home Rule City Act, MCL 117.4f(4); MSA 5.2079(4), authorizes a city to extend its sewer service beyond city limits and fix and collect charges for the costs of the service. The act specifically provides that the city may recover a fair rate of return on the value of property devoted to the service. *Oakland Co, supra* at 311, 313-314. The county asserted that the city's rate classification was unfair and that the extra charge to nonresidents constituted an unreasonable rate. This Court held that the rate difference was justified because city residents pay indirect costs to support the system, whereas nonresidents are free from those costs. This Court identified several of these costs: fire and police protection for the system, higher taxes to compensate for the tax exemption granted to the utility, and costs associated with the risk of tort liability arising out of the operation of the system. This Court further noted that the city is able to tax the enhanced value of city areas connected to the sewage system, whereas nonresidents are not similarly burdened. *Id.* at 312-313.

This Court's decision in *Oakland Co* did not hinge on the city's statutory authority to recover a fair rate of return on the value of property devoted to the service. *Detroit v Highland Park*, 326 Mich 78; 39 NW2d 325 (1949), a case this Court cited in *Oakland Co*, is instructive in this regard. In *Highland Park*, the Court

considered Highland Park's challenge to the rate Detroit charged for use of its sewage disposal system. The Court emphasized that regardless of the statute under which the city constructs the system, the city may set reasonable rates for usage because it is authorized to operate a public utility. *Id.* at 99, 104. The Court framed the issue as requiring that it determine whether the rate was reasonable. *Id.* at 89. The Court explained:

> The court will not set a formula in accordance with which Highland Park is to pay for the services of Detroit's sewage disposal system. This is a legislative matter and unless the rate is arbitrary, capricious or unreasonable, the courts will not interfere. [*Id.* at 92.]

After considering Highland Park's challenge to Detroit's recovery of specific costs within its rate structure, the Court examined Detroit's practice of charging residents and nonresidents different rates. The Court upheld the practice under the circumstances of that case, reasoning as follows:

> The rate lawfully established by the plaintiff is assumed to be reasonable in absence of a showing to the contrary or a showing of fraud or bad faith or that it is capricious, arbitrary or unreasonable, and the burden of proof is on the defendant to show that the rate is unreasonable. The mere fact that there is a differential between the rate charged to the residents of Detroit and the rate charged to the adjacent municipalities does not make the latter rate unreasonable. Plaintiff may not charge the adjacent municipalities a rate sufficient to pay part of the cost of furnishing service to its own residents, but may pay part of the costs of the system out of general taxes so as to lower the actual rate to its own residents, and may further take into consideration the fact that the property of the utility is not taxed and the

other services furnished by the city without charge, such as fire and police protection, et cetera. [*Id.* at 100-101.]

Thus, consistent with *Highland Park, supra,* and *Oakland Co, supra,* a unit of local government that operates a sewer system may charge nonresident users higher rates, as long as the difference represents the indirect costs that its residents pay. The local government may not charge nonresidents higher fees merely to subsidize its residents' use of the system.

In this case, the trial court correctly determined that defendant could impose a reasonable connection charge. MCL 46.175; MSA 5.2767(5), MCL 141.121; MSA 5.2751; see *Highland Park, supra* at 100-101. The court also correctly determined that defendant may charge residents and nonresidents different rates. However, defendant may charge nonresidents the higher rate only if residents pay indirect costs that nonresidents do not pay. Further, the rate must be reasonable in light of the indirect costs. *Highland Park, supra* at 101. Because the circuit court did not consider whether the magnitude of the differential (fifty percent) is reasonable under the circumstances of this case, the matter must be reversed to that extent and remanded for further proceedings regarding whether the connection charge is reasonable.

II

We reject plaintiff's second contention that the trial court erred in granting summary disposition regarding count I because defendant's method of calculating connection fees violates equal protection and due process guarantees. This Court reviews de novo a trial court's ruling on a motion for summary disposi-

tion. *Frankenmuth Mut Ins Co v Masters*, 225 Mich App 51, 55; 570 NW2d 134 (1997). A motion for summary disposition under MCR 2.116(C)(10) tests the factual basis underlying a plaintiff's claim and permits summary disposition when, except as to the amount of damages, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. When deciding the motion, the court considers the pleadings, affidavits, depositions, admissions, and other documentary evidence available in a light most favorable to the opposing party. *Frankenmuth*, at 55-56.

The test for determining whether an ordinance comports with due process is two-fold. First, the ordinance must be within the range of power conferred by the Legislature. Second, the ordinance must be reasonable. That is, a rational relationship must exist between the municipality's exercise of police power and the public health, safety, morals, or general welfare. See *Square Lake Hills Condominium Ass'n v Bloomfield Twp*, 437 Mich 310, 317-318; 471 NW2d 321 (1991); see also *Shavers v Attorney General*, 402 Mich 554, 612; 267 NW2d 72 (1978); *Katt v Ins Bureau*, 200 Mich App 648, 651; 505 NW2d 37 (1993). An ordinance that is obviously enacted in the interest of public health, safety, and welfare enjoys a presumption of validity. *Square Lake, supra* at 318, n 14. The court may declare such an ordinance invalid "only when it plainly appears that it does not tend, in any applicable degree, to promote those ends and the power to legislate has been exercised arbitrarily." *Id.*

Defendant may rationally impose classifications upon the users of its sewer without violating equal protection guarantees as long as it treats all users

within a given class alike. *Brittany Park Apartments v Harrison Charter Twp*, 432 Mich 798, 804; 443 NW2d 161 (1989). Defendant's ordinance enjoys a presumption of constitutionality, and plaintiff must prove that the classification is not rationally related to a legitimate state interest. *Id.* Under the rational basis test, plaintiff must demonstrate that the ordinance is discriminatory and arbitrary and that the classifications are without reasonable justification. *Id.* In reviewing an equal protection challenge, the court applies a two-part test, asking:

> "(1) Are the enactment's classifications based on natural distinguishing characteristics and do they bear a reasonable relationship to the object of the legislation?"
>
> "(2) Are all persons of the same class included and affected alike or are immunities or privileges extended to an arbitrary or unreasonable class while denied to others of like kind?" [*Id.*, quoting *Alexander v Detroit*, 392 Mich 30, 35-36; 219 NW2d 41 (1974).]

In this case, plaintiff concedes that Ordinance No. 52-B serves a legitimate government purpose, i.e., the construction and operation of a sewage disposal system. However, plaintiff claims that defendant's use of the table of unit factors to accomplish this purpose is arbitrary because the table does not accurately reflect plaintiff's use of the sewer system. We reject plaintiff's argument. Defendant's use of the table of unit factors is not rendered unreasonable or arbitrary because plaintiff's actual peak flow may have been lower than the number of units defendant assigned to it. "Reasonable" does not mean exact and is " ' "not subject to mathematical computation with scientific exactitude." ' " *Brittany Park Apartments*, *supra* at 805, quoting *Land v City of Grandville*, 2 Mich App

681, 689; 141 NW2d 370 (1966),   quoting *Meridian Twp v East Lansing*, 342 Mich 734, 749; 71 NW2d 234 (1955).

The table of unit factors reflects a reasoned attempt to apportion the sewer costs among users and ensure that the system will have sufficient capacity. Genesee County Drain Commission staff members and an advisory committee developed the table of unit factors as a way to apportion the cost of a sewer among users in different communities. The commission considered academic texts, tables used by other counties, and a study of the sewage rate flows of different establishments to generate the unit factors. Defendant's expert, Wallace J. Benzie, explained that the unit factor assigned to a class of users takes into account peak flow figures so as to ensure that the sewer will have sufficient capacity. According to Benzie, while .10 units for each member may not reflect a particular country club's actual use, it represents the peak flow of all country clubs in the system. Plaintiff presented no evidence to rebut Benzie's testimony. Therefore, the trial court properly granted summary disposition regarding count I because defendant's use of the table of unit factors is neither arbitrary nor unreasonable.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.