UNITED STATES of America for the Use
and Benefit of TWIN COUNTY TRANS-
IT MIX, INC., Plaintiff,

v.

R. P. McTEAGUE CONSTRUCTION
CORP., Fidelity and Deposit Company
of Maryland and Jondray Construction
Corp., Defendants.

No. 64-C-1092.

United States District Court
E. D. New York.

Feb. 20, 1967.

Max E. Greenberg, New York City,
for plaintiff; Norman Roth, New York
City, of counsel.

Paltrow & Pudalov, Massapequa Park,
N. Y., for defendants R. P. McTeague
Const. Corp. and Fidelity & Deposit Co.
of Maryland; Murray Pudalov, Mas-
sapequa Park, N. Y., of counsel.

BARTELS, District Judge.

The United States has instituted this
suit on behalf of Twin County Transit
Mix, Inc. (referred to herein as the
plaintiff) on a bond given by the defend-
ant R. P. McTeague Construction Corp.
(McTeague) under the Miller Act, 40
U.S.C.A. § 270a-d, for the purpose of
securing payment for labor and material
supplied under a contract entered into
by McTeague with the Government.

McTeague was the general contractor
for the construction of an automotive
maintenance shop at the Suffolk County
Air Base under a contract entered into
with the Government, dated February
12, 1964. In connection with the execu-
tion of the contract McTeague delivered
to the Government a bond executed by
Fidelity and Deposit Company of Mary-
land as surety, in the sum of $205,747.50,
conditioned upon the payment of claims
of persons supplying labor and material
for the construction of the above men-
tioned project.

About February 24, 1964 McTeague
sublet to Jondray Construction Corp.
the performance of certain concrete
work required for the construction of
the project by the plans and specifica-
tions referred to in the general contract.
Between April 16, 1964 and July 18, 1964,
pursuant to orders received from Jon-
dray Construction Corp., the plaintiff
delivered to the site of the project a
total of 716 cubic yards of concrete which
was used by Jondray in the prosecution
of its work on the project. A dispute
developed between McTeague and Jon-

dray and Jondray's services at the job site were terminated during July 1964. The date of the last delivery by the plaintiff was July 18, 1964. The agreed price and reasonable value of the concrete delivered was $9,760.75, no part of which was paid. Plaintiff claims that it mailed to McTeague an unregistered letter dated September 4, 1964 demanding from it payment of the sums due from Jondray. McTeague denies receiving the letter and consequently a question of fact is presented.

## I

One of the purposes of the registered mail requirement in the Miller Act is to require written notice to a general contractor by those supplying labor and material within ninety days after completion of the work, in order that the contractor may delay settlement with his sub-contractor and thus protect himself and his bond against unknown claimants with whom he has no direct contractual relationship. Coffee v. United States, 5 Cir. 1946, 157 F.2d 968. The leading case of Fleisher Engineering & Constr. Co. v. United States, 1940, 311 U.S. 15, 19, 61 S.Ct. 81, 83, 85 L.Ed. 12, states that the purpose of requiring service by registered mail is " * * * to assure receipt of the notice, not to make the described method mandatory so as to deny right of suit when the required written notice within the specified time had actually been given and received. In the face of such *receipt*, the reason for a particular mode of service fails. It is not reasonable to suppose that Congress intended to insist upon an idle form." (Emphasis supplied.) It is agreed by the authorities that the Miller Act must be liberally construed in order

that the remedy afforded to laborers and materialmen on a payment bond may not be defeated. When the notice is not sent by registered mail, the claimant must sustain the burden of proving receipt and it has been uniformly held that this fact may be proved as any other fact. Thus, in Coffee v. United States, supra, the materialman was able to establish receipt by testimony that he had exhibited to the contractor a written notice of his claim showing the amount claimed and the identity of the subcontractor. In Houston Fire & Casualty Insurance Co. v. United States, 5 Cir. 1954, 217 F.2d 727, oral notice of the claim and a written acknowledgment of of the request by the contractor in recognition of the sub-contractor's indebtedness to the materialman complied with the statutory requirement of the Act even though the writing relied upon was not signed, since requisite knowledge of the claim or debt was brought home to the contractor. In McWaters and Bartlett v. United States, 10 Cir. 1959, 272 F.2d 291, the materialman established receipt of sufficient notice by exhibiting to the contractor a written itemized statement of the sums due which the contractor read and examined while standing next to the claimant.[1] If in fact, the letter was received, the necessity for registered mail has been obviated.

The evidence in this case upon that question is conflicting. Joseph Muratore, the president of plaintiff testified, among other things, that in mid-June of 1964 he told McTeague, the president of defendant, at the job site that Jondray had not paid him; that in mid-July he again told McTeague at

[1]. The position adopted by the above authorities is that receipt of a written notice may be proved in the same manner as any other fact. However, a persuasive argument may be made that *Fleisher* does not so hold, since in that case receipt was admitted or at least not challenged, and accordingly upon denial of receipt by the contractor the only method of proof is by registered mail. The thesis of this contention is that the sole purpose of the statutory requirement of registered mail was to eliminate disputes upon the question of receipt where receipt is denied or challenged by foreclosing any other proof of notice. Such an argument, however, would not be consistent with a liberal construction of the statute the purpose of which is achieved by interpreting the designation of registered mail as eliminating the necessity for proving receipt which otherwise would be required.

the job site that he had not been paid; that in the latter part of July he received a telephone call from McTeague at which time he told McTeague again that he had not been paid, at which time McTeague assured him not to worry about payment; that on September 4, 1964 he dictated and signed a letter to McTeague (a copy of which was introduced in evidence as Exhibit 6) in which he demanded payment of the sums owed to plaintiff by Jondray and that prior to dictating the letter he had talked with his attorney Morris Gaines; that the usual practice in his office was to place the letter in an envelope and to send one of the girls to the Post-Office to mail the same and that the envelope used contained a notation upon the outside of plaintiff's address; that a week after September 4, 1964 he received a telephone call from McTeague who stated that he received the letter and would like to discuss the matter with him at McTeague's office and that McTeague would have his attorney there, whereupon Muratore replied that he would have his attorney there also; that he later telephoned his attorney Morris Gaines and told him of this conversation. McTeague, on the other hand, denied any discussions with Muratore at the job site or over the telephone regarding any monies due Muratore from Jondray and denied making any appointment with Muratore for late September. In fact, he denied any notice or knowledge that sums were due Muratore from Jondray until shortly before he was served with a summons and complaint in this action.

Morris Gaines (Muratore's attorney) testified that about a week after September 4, 1964 (on which date more than a month remained during which a registered letter could have been mailed), Muratore had telephoned him and stated that he, Muratore, received a telephone call from McTeague in response to the September 4th letter, that McTeague wanted to sit down and discuss the matter, and that an appointment had been made for a Friday in the middle of September at 2 P.M. at McTeague's office; that the day before the appointment Gaines called McTeague's office for confirmation and was told that McTeague was out of town; that when he called later on the Friday morning designated he was informed by a girl in McTeague's office that the appointment was actually postponed; that thereafter he attempted to contact McTeague by telephone several times and left repeated messages but "got pretty much nowhere". Hilda Paukovitz, secretary to Muratore, testified, after examining a carbon copy of the September 4, 1964 letter with her initials thereon, that the same was typed by her after dictation from Muratore and that in the regular course of business in the office all letters were mailed in stamped envelopes by her the same day and that while she did not remember mailing this particular letter she received responses to other letters she mailed that day. McTeague admits that he had meetings and discussions with Muratore in mid-June, mid-August and mid-September at the job site, but he states that at none of these meetings was the subject of Jondray's indebtedness to the plaintiff ever discussed. In view of McTeague's contingent liability as a general contractor to the plaintiff, it would appear most unlikely that this liability was not discussed in connection with Jondray's unsatisfactory performance which admittedly was discussed.

The Court finds that the testimony of Muratore was much more probable and convincing than the repeated denials of McTeague. Moreover, Muratore's testimony was substantiated by circumstantial testimony of Paukovitz and Gaines. It is the conclusion of the Court that plaintiff mailed a proper written notice to McTeague, which complied with the statute, and although not sent by registered mail, was received by McTeague within the statutory time limit. Accordingly, judgment is ordered for the plaintiff.