PI-CON, INC v A J ANDERSON CONSTRUCTION COMPANY

Docket No. 83682. Argued October 4, 1989 (Calendar No. 3). Decided July 30, 1990.

Pi-Con, Inc., brought an action in the Wayne Circuit Court against A. J. Anderson Construction Company, a general contractor, and Federal Insurance Company, its surety, seeking to recover on a public works payment bond the cost of materials and services provided to Brian & Gregory Contracting Company, Anderson's subcontractor, for a construction project, after Brian & Gregory filed bankruptcy. The court, Charles Kaufman, J., granted summary judgment for the plaintiff on the basis that Anderson had actual notice of Pi-Con's work on the project even though the statutory thirty-day notice was sent by ordinary first-class mail and not by certified mail as required by MCL 129.207; MSA 5.2321(7). The Court of Appeals, MacKenzie, P.J., and Doctoroff and P. J. Clulo, JJ., reversed, holding that mailing notice by regular mail, despite evidence of actual notice, did not satisfy the statute and that strict compliance of the notice requirements is required (Docket No. 95471). The plaintiff appeals.

In an opinion by Justice Archer, joined by Justices Levin, Cavanagh, and Griffin, the Supreme Court held:

A claimant on a public works bond may maintain an action on the bond upon establishing that the principal contractor actually received timely written notice of materials furnished, the labor performed, the party contracting for the labor or materials, and the site for performance or delivery. A failure to send notice by certified mail as prescribed by MCL 129.207; MSA 5.2321(7) will not preclude recovery, and the claimant may prove the principal contractor's actual receipt of timely notice by a preponderance of the evidence.

1. Notice under MCL 129.207; MSA 5.2321(7) is intended to inform a principal contractor of a subcontractor's involvement in a project before or soon after the commencement of that involvement, so as to ensure knowledge regarding any possible

REFERENCES
Am Jur 2d, Notice §§ 28, 34, 42.
See the Index to Annotations under Notice.

claims to which the principal contractor's public works bond may be subjected. As long as timely written notice is received by the principal contractor, there is compliance with that intent. Insistence that notice be made only by certified mail is hypertechnical, exalting form over substance. The public works bond act regulates the manner, and not the method or proof, of delivery. The requirement is substantive, intended to ensure actual receipt of notice, and not to qualify the right to sue on the manner or proof of delivery.

2. In this case, summary disposition for either party under MCR 2.116(C)(10) is inappropriate because of the existence of a dispute regarding whether notice actually was received, a material fact. The plaintiff is entitled to a trial to resolve the dispute.

Justice LEVIN, writing separately, stated that on remand the scope of inquiry should be broadened to include consideration of whether the general contractor paid the subcontractor for labor and material supplied by the plaintiff before the plaintiff served the general contractor with notice that it intended to rely on its rights under the public works bond act.

Pi-Con claims that the thirty-day notice was actually received. Pi-Con may prevail on that basis on remand. If, however, it is decided on remand that the notice was not actually received, that should not be determinative if notice of the claim reached Anderson before it paid Brian & Gregory for labor and materials supplied by Pi-Con.

Reversed and remanded.

Chief Justice RILEY, joined by Justices BRICKLEY and BOYLE, dissenting, stated that pursuant to MCL 129.207; MSA 5.2321(7), in order to recover on a public works payment bond given by a principal contractor, a subcontractor-claimant must send by certified mail, and the principal contractor receive, timely written notice of the furnishing by the subcontractor of materials or labor. Compliance with the certified mail requirement should be excused only where a genuine issue of material fact does not exist regarding whether the principal contractor received timely written notice under the payment bond statute.

*Fleisher Engineering & Construction Co v United States,* 311 US 15 (1940), interpreting the Miller Act, 40 USC 270b, the federal counterpart of MCL 129.207; MSA 5.2321(7), requires a subcontractor to prove that the principal contractor received written notice within the time prescribed by the statute and not merely that the principal contractor had notice. *Fleisher* excuses compliance with the certified mail requirement only where a genuine issue of material fact does not exist regarding

whether the principal contractor received written notice within the time prescribed by the payment bond statute. Although it makes little sense under *Fleisher* to adhere to the certified mail requirement when the contractor concedes it received written notice, it does not also follow that the terms of the statute should be ignored completely and a trial on the merits be required every time a subcontractor contends that it sent timely written notice by means other than certified mail. To do so would emasculate the statute's certified mail requirement and render it nugatory.

Timely written notice is a condition precedent under MCL 129.207; MSA 5.2321(7). Subsequent case law interpreting the Miller Act or MCL 129.207; MSA 5.2321(7) and the legislative history of the notice provision lead to the conclusion that in the absence of timely written notice by certified mail a subcontractor must prove that it sent, and that the principal contractor actually received, timely written notice. However, a claimant should not be permitted to circumvent the certified mail requirement and survive a motion for summary disposition simply by alleging that it sent, and the principal contractor received, timely written notice. Rather, if a genuine issue of material fact exists regarding whether the principal contractor received written notice within the time period prescribed by the statute, the claimant should not be permitted to recover on the bond.

169 Mich App 389; 425 NW2d 563 (1988) reversed.

BONDS — PUBLIC WORKS — SUBCONTRACTORS — NOTICE.

A claimant on a public works bond may maintain an action on the bond upon establishing that the principal contractor actually received timely written notice of materials furnished, the labor performed, the party contracting for the labor or materials, and the site for performance or delivery; a failure to send notice by certified mail as prescribed by the public works bond act will not preclude recovery, and the claimant may prove the principal contractor's actual receipt of timely notice by a preponderance of the evidence (MCL 129.207; MSA 5.2321[7]).

*Goldstein, Serlin, Reizen, Rosenbaum & Baker, P.C.* (by *Barry M. Rosenbaum* and *Richard E. Baker*), for the plaintiff.

*Mager, Monahan, Donaldson & Alber* (by *Lita Masini Popke*) for the defendants.

ARCHER, J. At issue is whether the plaintiff, Pi-Con, Inc., who furnished materials and services to a subcontractor on a public works project, may recover money owed for those materials and services under the provisions of a public works payment bond, where the notice of furnishing materials and services was sent to defendant general contractor, A. J. Anderson Company, by ordinary mail, but not, as required by statute, by certified mail.

We hold that, so long as Pi-Con timely sent notice which otherwise complies with the notice requirements of the public works bond act, MCL 129.207; MSA 5.2321(7), and Pi-Con proves by a preponderance of the evidence that Anderson timely received notice, Pi-Con's failure to send notice via certified mail will not preclude recovery on the bond.

I

Pi-Con entered into a contract with Brian & Gregory Contracting Company, a subcontractor of Anderson, to furnish materials and services for a construction project at Cass Technical High School in Detroit for which Anderson was the general contractor. The contract between Pi-Con and Brian & Gregory is dated November 4, 1982. Pi-Con asserts that it began furnishing materials and services pursuant to the contract on November 22, 1982.

The statute provides that a claimant not having a direct contractual relationship with a general contractor shall not have a right of action upon a public works payment bond unless two written notices are served, the first within thirty days after the first furnishing of materials or labor, and

the second within ninety days of the last furnishing of materials or labor.[1]

The statute further provides that the notices "shall be served by mailing the same by certified mail."[2]

Pi-Con claimed in its affidavit in support of its motion for summary disposition that it mailed notice to Anderson and the Detroit Board of Education, with a copy to Brian & Gregory, on Decem-

---

[1]   A claimant who has furnished labor or material in the prosecution of the work provided for in such contract in respect of which payment bond is furnished under the provisions of section 3, and who has not been paid in full therefor before the expiration of a period of 90 days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which claim is made, may sue. on the payment bond for the amount, or the balance thereof, unpaid at the time of institution of the civil action, prosecute such action to final judgment for the sum justly due him and have execution thereon. A claimant not having a direct contractual relationship with the principal contractor shall not have a right of action upon the payment bond unless (a) he has within thirty days after furnishing the first of such material or performing the first of such labor, served on the principal contractor a written notice, which shall inform the principal of the nature of the materials being furnished or to be furnished, or labor being performed or to be performed and identifying the party contracting for such labor or materials and the site for the performance of such labor or the delivery of such materials, and (b) he has given written notice to the principal contractor and the governmental unit involved within ninety days from the date on which the claimant performed the last of the labor or furnished or supplied the last of the material for which the claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. *Each notice shall be served by mailing the same by certified mail,* postage prepaid, in an envelope addressed to the principal contractor, the governmental unit involved, at any place at which said parties maintain a business or residence. The principal contractor shall not be required to make payment to a subcontractor of sums due from the subcontractor to parties performing labor or furnishing materials or supplies, except upon the receipt of the written orders of such parties to pay to the subcontractor the sums due such parties. [MCL 129.207; MSA 5.2321(7). Emphasis added.]

[2] *Id.*

ber 15, 1982, advising that Pi-Con was supplying materials and services to Brian & Gregory for the Cass Technical project. The notice was sent by ordinary first-class mail and not, as required by the statute, by certified mail. Anderson asserts that a copy of the December 15 notice could not be found in Anderson's file, and alleges it never received it.

Pi-Con, on September 6, 1984, within ninety days of the last furnishing of materials or labor, notified Anderson and the school board by certified mail that Brian & Gregory owed Pi-Con $25,140.

Brian & Gregory had by then filed for bankruptcy. This action was commenced to recover on the payment bond. The circuit court granted Pi-Con's motion for summary judgment on the basis that Anderson had actual notice of Pi-Con's work on the Cass Technical project.[3]

The Court of Appeals reversed, holding, in reliance on decisions of that Court,[4] "that mailing notice by regular mail, despite evidence of actual notice, does not satisfy the statute and that strict compliance with the statute's notice requirements is required."[5] We reverse.

II

We are guided by the decision of the United States Supreme Court in *Fleisher Engineering & Construction Co v United States ex rel Hallenbeck,*

---

[3] Anderson asserts it "had no knowledge of the status of subcontract payments between Brian & Gregory Contracting Company and Pi-Con, Inc."

[4] *Charles W Anderson Co v Argonaut Ins Co,* 62 Mich App 650, 653-654; 233 NW2d 691 (1975); *Square D Environmental Corp v Aero Mechanical, Inc,* 119 Mich App 740, 744; 326 NW2d 629 (1982); *John A Hall Construction Co v Boone & Darr, Inc,* 102 Mich App 786, 795-796; 302 NW2d 850 (1981).

[5] *Pi-Con, Inc v Anderson Construction Co,* 169 Mich App 389, 394; 425 NW2d 563 (1988).

311 US 15; 61 S Ct 81; 85 L Ed 12 (1940). There, in an action brought on behalf of a subcontractor against the principal contractor to recover on a public works payment bond, the Court held that where actual receipt of the notice and the sufficiency of its statements had not been challenged, the failure to send notice by registered mail would not prevent recovery on the bond.

*Fleisher* construed the Miller Act, 40 USC 270b(a), the federal public works bond on which Michigan's statute is modeled. The notice requirements of the Miller Act are nearly identical with those of the statute at issue here, except the federal statute requires notice to the general contractor of a public works project only once, within ninety days from the date on which the subcontractor completes its work.[6]

The Supreme Court held that substantial compliance with the notice requirements was sufficient to perfect an action on the bond:

> We think that the purpose of this provision [notice by certified mail requirement] as to manner of service was to assure receipt of the notice, *not to make the described method mandatory so as to deny right of suit when the required written notice within the specified time had actually been*

---

[6] [A]ny person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, . . . or in any manner in which the United States marshall . . . is authorized by law to serve summons. [40 USC 270b(a).]

*given and received.* In the face of such receipt, the reason for a particular mode of service fails. It is not reasonable to suppose that Congress intended to insist upon an idle form. Rather, *we think that Congress intended to provide a method which would afford sufficient proof of service when receipt of the required written notice was not shown.* [*Fleisher, supra* at 19. Emphasis added.]

We agree. Applying *Fleisher*'s reasoning to Michigan's public works bond statute as illuminated by prior case law, we hold that a claimant on a bond may maintain an action on the bond upon establishing compliance with four substantive elements of the notice provisions of MCL 129.207; MSA 5.2321(7). First, a claimant must prove that the principal contractor actually received notice. Second, the notice must relate "the nature of the materials being furnished or to be furnished, or labor being performed or to be performed and identify[ ] the party contracting for such labor or materials and the site for the performance of such labor or the delivery of such materials . . . ."[7] Third, the notice sent must have been written. Fourth, the notice must have been received within the time limits prescribed by the statute.

This Court established the fourth element in *People ex rel Wheeling Corrugating Co v W L Thon Co,* 307 Mich 273; 11 NW2d 886 (1943). In that case we denied recovery to a claimant who was sixty days tardy in giving notice of the completion of its work, holding that the time limits contained within the public works bond act were mandatory. Cf. *People ex rel Chasteen v Michigan Surety Co,* 360 Mich 546; 104 NW2d 213 (1960).

As to the third element, this Court established

[7] MCL 129.207; MSA 5.2321(7).

in *People ex rel F Yeager Bridge & Culvert Co v Cooke Contracting Co,* 372 Mich 563; 127 NW2d 308 (1964), that provision of written notice was required under the statute. "Mere knowledge by a surety that a certain party had furnished materials is insufficient notice." *Id.* at 565. See also *Square D Environmental Corp v Aero Mechanical, Inc,* 119 Mich App 740; 326 NW2d 629 (1982). Federal courts interpreting the Miller Act have also held that for a notice to a contractor to be sufficient, it must be written. See, e.g., *United States ex rel Excavation Construction, Inc v Glenn-Stewart-Pinckney Builders & Developers, Inc,* 388 F Supp 289, 296-297 (D Del, 1975).

The second element, regarding the detail required in the notice, was clarified in *Wheeling,* where this Court stated that conversations between the general contractor and the surety regarding the several parties furnishing materials on the project could not fulfill the notice requirement. The conversations did not comply with the notice requirement because they were "of a very general nature . . . with nothing specific being said as to the amount or character of any of these claims." *Wheeling* at 277.

We look to *Fleisher* in establishing the first element, that the principal contractor must actually receive notice in order, for a claimant to perfect its right on the bond. *Fleisher* determined that the purpose behind the Miller Act's provisions regarding the method of mailing notice "was to assure receipt of the notice . . . ." *Id.* at 19.

The purpose behind the thirty-day notice required by MCL 129.207; MSA 5.2321(7) is to provide principal contractors with detailed notice of a subcontractor's involvement on a project before, if not soon after, the commencement of that involvement. Such notice is necessary to ensure principal

contractors knowledge regarding any possible claims to which their bonds might later be subjected and to assure that principal contractors are not prejudiced by having to pay out of a bond for labor or materials performed by third parties after already paying their subcontractors for that same labor or materials. So long as the principal contractors receive notice, the intent of the Legislature is fully complied with. To insist that the notice be given by certified mail would require insisting on "idle form." *Fleisher* at 19.

III

We further hold that Pi-Con is allowed to prove Anderson's actual receipt of timely written notice by a preponderance of the evidence.

It is possible to limit the rule of *Fleisher* to its facts and hold that the certified mailing requirement is not strictly required only when the principal contractor does not dispute receiving the notice. We decline to read *Fleisher* that narrowly and note that federal courts interpreting the Miller Act's notice requirements after *Fleisher* have similarly rejected such a reading.

In *United States ex rel Birmingham Slag Co v Perry,* 115 F2d 724 (CA 5, 1940), the court held that the claim of a supplier of materials was not barred where the trial court found as fact that the principal contractor received notice of the supplier's claim in a letter the contractor received, through ordinary mail, from the government agency paying for the construction project. In *National State Bank of Newark v Terminal Construction Corp,* 217 F Supp 341, 355 (D NJ, 1963), the defendant principal contractor denied receiving notice as required by a bond, but the court held, citing *Fleisher,* "[a]lthough the bonds require

that the notice be sent by registered mail, this is not necessary if the claimant can show that the notice was actually received." In *Glenn-Stewart-Pinckney, supra,* and *United States ex rel Twin Co Transit Mix, Inc v R P McTeague Construction Corp,* 264 F Supp 619 (ED NY, 1967), the courts held that where receipt of notice is denied, claimants may prove receipt in the same manner as any other fact so long as they sustain their burden of proof by a preponderance of the evidence. Cf. *Coffee v United States ex rel Gordon,* 157 F2d 968 (CA 5, 1946).

The dissent argues that, in order for the plaintiff to maintain an action on the bond, it must either comply with the certified mailing requirement or present some other proof that would foreclose the existence of a genuine factual dispute regarding receipt of the notice. The dissent claims such an interpretation is necessary to prevent rendering the certified mailing requirement "nugatory." *Post,* p 406.

However, the dissent's interpretation itself would render the certified mailing requirement nugatory, because it would impose a hypertechnical requirement elevating form over substance. The dissent's reasoning appears to be grounded in the belief that the certified mailing requirement is entirely procedural, designed to control the nature and quality of proofs in any action on the bond. Instead of finding any substantive purpose in the certified mail requirement, the dissent concludes that it is intended to require uncontrovertible proof of the general contractor's receipt.[8]

The dissent, in our view, is wrong in this regard.

---

[8] The dissent claims that the Legislature "presumably adopted the certified mail requirement to substantiate receipt of the written notice and, therefore, avoid disputes regarding whether the principal contractor received written notice." *Post,* p 405. However, the dissent offers no legislative history or case law authority to justify this

Had the Legislature desired a procedure whereby it could conclusively be established that defendant received plaintiff's notice, it would have required notice be sent certified mail with return receipt requested.[9] Certified mailing alone does not guarantee the retention of records of delivery, because the United States Postal Service retains such records for only two years. By requiring notice be sent return receipt requested, on the other hand, the Legislature could have ensured that all claimants on bonds always had proof of delivery. Likewise, had the Legislature intended solely to control the manner of proof of receipt, it could have drafted a statute which required claimants to prove receipt of notice by means of postal records of certified mail delivery. The statute at hand, however, regulates the manner of delivery, not the method of proof of delivery.

We view the certified mail requirement as substantive. The Legislature, recognizing the vagaries of ordinary first-class mail, required certified mailing as a way to better ensure actual receipt of the notice. The Legislature intended to protect public works bonds from claims by materialmen and subcontractors of whose participation on the project the general contractor was not notified; it mandated a more certain form of postage to specify that first-class mailing was inadequate, not to control the form of proof of receipt in any subsequent actions on the bond. As the Court stated in *Fleisher:* "We think that the purpose of this provi-

"presumption." In fact, the dissent fails to mention federal authority that has specifically rejected this interpretation of the certified mailing requirement of the Miller Act. See *Twin Co Transit Mix, supra.*

[9] We note the absence of a return receipt requirement not, as the dissent suggests, to inform the Legislature how it *should* write the statute, but to interpret how it did write the statute. We note only that, had the Legislature intended to control the manner of proof of delivery of notice, as the dissent suggests, it would have written the statute differently.

sion as to manner of service was *to assure receipt of the notice . . . .*" 311 US 19. (Emphasis added.)

Because we agree with the Supreme Court that the certified mail requirement is intended to ensure actual receipt and not to qualify the right to sue on a manner of delivery or proof of delivery, we hold that the plaintiff has a right to prove actual receipt of notice by a preponderance of the evidence. Such a rule furthers the substantive purpose of the notice requirement and prevents a danger which the dissent's rule would allow. Under the rule advocated by the dissent, general contractors could defeat legitimate claims on public works bonds where the claimants fail to send otherwise sufficient notice by certified mail by simply raising a factual dispute regarding receipt of the notice. Allowing contractors such a trump card would run contrary to the ultimate purpose of the public works bond act, the protection of subcontractors and suppliers of materials.

IV

Given the procedural posture of this case, we remand to allow the plaintiff a chance to prove by a preponderance of the evidence that Anderson received timely, written, and sufficient notice of Pi-Con's participation in the Cass Tech project.

The trial court granted the plaintiff's motion for summary disposition under MCR 2.116(C)(10), finding that there was no genuine issue with regard to any material fact and that plaintiff was entitled to judgment as a matter of law. The trial court never made a finding regarding whether the defendant ever actually received the notice which the plaintiff claims to have sent. In fact, counsel for the plaintiff conceded at the hearing on the summary disposition motion that "maybe there is an issue of

fact as to whether [Anderson] received a notice."
The trial court's ruling, therefore, is based on its
holding that Anderson's mere knowledge of Pi-
Con's participation in the construction project,
coupled with Anderson's assertion that it mailed
the notice, constituted sufficient substantial com-
pliance with the notice requirement.

The Court of Appeals reversed the decision of
the trial court, and took the extra step of ordering
summary judgment for the defendant under MCR
2.116(C)(10). The Court concluded that the statute
required strict compliance and that the plaintiff's
claim was unperfected as a matter of law because
of the failure to send the notice via certified mail.

Granting summary disposition for either party
under MCR 2.116(C)(10) is inappropriate because of
the existence of a dispute regarding the material
fact whether notice was actually received. Pi-Con,
therefore, is entitled to a trial to resolve this issue.
We reverse the judgment of the Court of Appeals
and remand the case to the trial court for proceed-
ings consistent with this opinion.

LEVIN, CAVANAGH, and GRIFFIN, JJ., concurred
with ARCHER, J.

LEVIN, J. (*separate statement*). The statute pro-
vides in effect that an unpaid subcontractor, la-
borer, or supplier of materials shall have a direct
right of action against the general contractor and
its surety for the amount owing for labor and
materials supplied for the undertaking of the gen-
eral contractor although the unpaid subcontractor,
laborer, or supplier does not have a direct contrac-
tual relationship with the general contractor.[1]

___

[1] The right of action arises on the ninetieth day after the last
furnishing of labor or materials. See opinion of the Court, *ante*, p 379,
n 1, for text of the statute.

The statute provides, however, that such an unpaid claimant "shall not have a right of action" unless a written notice is served on the general contractor within thirty days after the first furnishing of labor or materials and another written notice is served on the general contractor and the governmental unit within ninety days of the last furnishing of labor or materials.[2]

I have signed the opinion of the Court because I agree that summary disposition was inappropriate in the circumstance that there was a dispute regarding the material fact whether the notice required to be given within thirty days was actually received.[3]

I write separately because I would broaden the scope of the inquiry on remand to include consideration of whether Anderson paid Brian & Gregory for labor and materials supplied by Pi-Con before Pi-Con served notice on Anderson that it intended to rely on its rights under the statute.

Pi-Con claims that the thirty-day notice was actually received. Pi-Con may prevail on that basis on remand. If, however, it is decided on remand that the notice was not actually received, that should not be determinative if notice of the claim reached Anderson before it paid Brian & Gregory for labor and materials supplied by Pi-Con.[4]

---

[2] See opinion of the Court, *ante,* p 379, n 1, for text of the statute.

[3] *Ante,* p 388.

[4] If Anderson paid Brian & Gregory for labor or materials supplied by Pi-Con, it may have violated a procedure established by court order.

The payment bond between Anderson as principal and Federal Insurance Company as surety is for $2,705,000 in respect to general building work for an addition to Cass Technical High School, Detroit.

The contract between Brian & Gregory and Anderson was entered into on June 16, 1982, and stated a contract price of $990,000.

Brian & Gregory filed a chapter 11 petition with the United States District Court on October 4, 1982. On October 22, 1982, a bankruptcy judge entered an order providing that Brian & Gregory was author-

The policy of the statute is that if the funds remaining owing by the general contractor (Anderson) to the subcontractor (Brian & Gregory) under their contractual arrangements are insufficient to pay an unpaid claimant (Pi-Con) because of vicissitudes of the job or of the general contractor/subcontractor contractual relationship, the loss is allocated to the general contractor. The loss is allocated to the unpaid claimant if the general contractor pays the subcontractor *for labor and materials supplied by the unpaid claimant* before the unpaid claimant served notice under the statute on the general contractor.

I

I agree with my colleagues that notice must be served before an unpaid claimant may maintain an action.[5] Unless the requisite notices shall have been served within the thirty- or ninety-day periods, the general contractor (Anderson) is at liberty

ized to complete work on the Cass Technical High School project, and to enter into an amendment of the contract between Anderson and Brian & Gregory, and that the contract as amended was affirmed.

The amendment provided that Brian & Gregory would furnish Anderson with a list of the names, addresses, and telephone numbers of all subcontractors and suppliers who were or may become claimants pursuant to § 7 of the public contractor bonding act (see n 1 for reference to the act), and that Brian & Gregory should furnish with each request for payment to Anderson a list of subcontractors, suppliers, and others who are entitled to receive payment for work reflected in the request for payment, and that Anderson "shall remit the net sum as determined by the parties, by check or other negotiable instrument made *payable jointly to Brian & Gregory and the supplier*." In the Matter of: Brian & Gregory Contracting Co., Inc., No. 82-05593-B, document 12. (Emphasis added.) See n 6.

*Thereafter,* on November 4, 1982, Pi-Con *entered into a contract* with Brian & Gregory to provide labor and materials for the Cass Technical High School project. Pi-Con's claim filed with the trustee in bankruptcy in the amount of $26,845.10 was allowed, and Pi-Con received a "dividend" from the trustee for $7,266.30.

[5] A complaint commencing an action may constitute notice. No clearer statement of intent to enforce rights under the statute could be given.

thereafter to pay a subcontractor (Brian & Gregory) with whom it does have a direct contractual relationship amounts owing an unpaid claimant (Pi-Con).[6]

Requiring Anderson to pay Pi-Con may very well mean that Anderson would be required to pay more in respect to its contract with Brian & Gregory than it contracted to pay. That might result, however, because Brian & Gregory was unable to obtain the supply of labor and materials within the amount it bid for the job either because it bid too low, misadventure on the job, unanticipated contingencies, or other circumstances.

The statute provides a right of direct recovery by the unpaid claimant against the general contractor and its surety without regard to whether there is sufficient money owing by the general contractor to the subcontractor to pay the unpaid claimant in full.[7]

The statute thus imposes, for the benefit of the unpaid claimant, on the general contractor the risks or loss resulting from the vicissitudes of the job and of general contractor/subcontractor contractual relationships. Loss so resulting cannot, consistent with the policy of the statute, be shifted to the unpaid claimant because of inconsequential delay in serving notice of claim.

It might be argued that the statute allocates such risks to the general contractor only for the benefit of an unpaid claimant who serves timely notice. Such literalism ignores the apparent policy of allocating the risks of loss resulting from vicissi-

[6] The statute provides, however, that a general contractor shall not be required to make payment to a subcontractor with whom it has a direct contractual relationship of sums due from the subcontractor to unpaid claimants for labor or materials. See last sentence of the statute quoted in the opinion of the Court, *ante,* p 379, n 1.

[7] And also without regard to the collectibility of the subcontractor or the claims of other creditors of the subcontractor.

tudes of the job and of the contractual relation-
ships to the general contractor. Pi-Con's providing
timely notice would not have prevented vicissi-
tudes of the job or of the contractual relationships
that gave rise to a shortfall in the amount of
money owing by Anderson to Brian & Gregory
available to pay Pi-Con.[8]

Providing timely notice can protect only against
the possibility that Anderson will have paid Brian
& Gregory for labor and materials supplied by Pi-
Con and then be called upon to pay again for the
same labor or materials. A general contractor
should not be permitted to escape from the respon-
sibility imposed on it by statute because of a
failure to serve timely notice that had no bearing
on and did not cause the events that give rise to
the money shortfall.

Where the loss of the general contractor cannot
be attributed to delay in complying with notice
requirements, where the loss is attributable to
failure of performance by the subcontractor of its
contractual obligations owing the general contrac-
tor, not attributable to a failure in performance of
the unpaid claimant, the statutory purpose of
providing a means of direct recovery without re-
gard to the status of the general contractor/sub-
contractor relationship should not be defeated on
the basis of inconsequential delay in serving notice
of claim.

II

The present public contractor bonding act was
enacted in 1963.[9] This Court has not construed
that statute as providing that the thirty- or ninety-
day notice provisions are so far mandatory that,

[8] See n 4.

[9] 1963 PA 213, MCL 129.201 et seq.; MSA 5.2321(1) et seq.

even if the general contractor has not paid the subcontractor for labor or materials provided by the unpaid claimant, the unpaid claimant cannot recover from the general contractor. The correct construction of the 1963 act is thus an open question.

The purpose of the notice provisions is to protect a general contractor, who makes disbursements to a subcontractor who fails to pay those with whom it deals, from being called upon to pay again for the *same* labor and materials. The thirty- and ninety-day notice provisions are mandatory in the sense that delay in giving notice defeats the claim of an unpaid claimant if the general contractor would, unless the time limits are enforced, in effect be required to pay again for the same labor and materials.

The thirty- and ninety-day periods are notice provisions, not statutes of limitations. Notice provisions, in contrast with statutes of limitations, are not designed to bar stale claims, but to give early notice of a potential claim so that the person entitled to notice can protect itself by taking appropriate action. If the failure to give timely notice did not result in the prejudice that the giving of notice seeks to forestall, the claim should not be barred as if it were stale, the purpose of requiring notice not having been thwarted.[10]

### III

Subsequent to the enactment of the 1963 public contractor bonding act, the Legislature repealed the mechanics lien law[11] and enacted the construc-

---

[10] See *Carver v McKernan*, 390 Mich 96, 100; 211 NW2d 24 (1973); *Hobbs v Dep't of State Hwys*, 398 Mich 90, 96; 247 NW2d 754 (1976).

[11] 1891 PA 179 as amended repealed by 1980 PA 497, § 303, MCL 570.1303; MSA 26.316(303).

tion lien act.[12] That act provides, in effect, that even if an unpaid claimant files an untimely notice, the unpaid claimant's right to a construction lien shall not be defeated except to the extent that payments were made pursuant to a sworn statement or waiver of lien "for work performed or material delivered *by the lien claimant.*"[13] (Emphasis added.)

I would regard the construction lien act as a current statement of public policy and a guide to the construction of the earlier 1963 act even though the 1963 act has not been amended to so state. There is no reason to suppose that the Legislature might enact one policy in this regard for unpaid claimants in respect to private construction contracts and another for unpaid claimants in respect to public works construction contracts under the circumstance that, under the public contractor bonding act, the risk of loss is imposed on the general contractor, not the government.

RILEY, C.J. I respectfully dissent because, while I agree with the majority that this Court should look to the United States Supreme Court decision in *Fleisher Engineering & Construction Co v*

---

[12] 1980 PA 497, MCL 570.1101 *et seq.*; MSA 26.316(101) *et seq.*

[13] (6) The failure of a lien claimant, to provide a notice of furnishing within the time specified in this section shall not defeat the lien claimant's right to a construction lien for work performed or materials furnished by the lien claimant before the service of the notice of furnishing except to the extent that payments were made by or on behalf of the owner or lessee to the contractor pursuant to either a contractor's sworn statement or a waiver of lien in accordance with this act *for work performed or material delivered by the lien claimant.* This subsection does not apply to a laborer.

(7) The failure of a laborer to provide a notice of furnishing to the designee as required by subsection (2) shall defeat the laborer's lien for those wages for which the notice of furnishing is required. [MCL 570.1109; MSA 26.316(109). Emphasis added.]

*United States ex rel Hallenbeck,* 311 US 15; 61 S
Ct 81; 85 L Ed 12 (1940), for guidance in the
instant matter, I disagree with the majority's in-
terpretation and application of *Fleisher* to the
facts of the instant case. This case presents us
with the issue whether the failure to comply with
the written notice by certified mail requirement of
MCL 129.207; MSA 5.2321(7) precludes a subcon-
tractor from recovering on a public works payment
bond. I would hold that pursuant to MCL 129.207;
MSA 5.2321(7), a claimant must send, and the
principal contractor must receive, timely written
notice by certified mail. Moreover, I would hold
that *Fleisher only* excuses compliance with the
certified mail requirement when a genuine issue of
material fact does *not* exist regarding the issue
whether the principal contractor received timely
written notice under the payment bond statute.
Thus, I would affirm the result reached by the
Court of Appeals.

I

The United States Supreme Court decision in
*Fleisher* involved the interpretation of the Miller
Act, 40 USC 270b, the federal counterpart of MCL
129.207; MSA 5.2321(7).[1] In *Fleisher,* the United

---

[1] These provisions are almost identical, except that the Miller Act
only requires ninety-days' notice from the date on which the claimant
last provided labor or materials for which the claimant seeks reim-
bursement. 40 USC 270b(a) provides in pertinent part:

That any person having direct contractual relationship with
a subcontractor but no contractual relationship express or
implied with the contractor furnishing said payment bond shall
have a right of action upon the said payment bond upon giving
written notice to said contractor within ninety days from the
date on which such person did or performed the last of the
labor or furnished or supplied the last of the material for which
such claim is made, stating with substantial accuracy the
amount claimed and the name of the party to whom the

States brought suit on behalf of a subcontractor to recover on a payment bond given by the defendant. The United States Supreme Court addressed the issue whether a claimant must prove receipt of written notice by certified mail, or whether actual receipt would suffice under the notice provision of the Miller Act. The defendant conceded that it received notice by regular mail. The Court distinguished between "conditions precedent to suit" and those additional requirements which guarantee that a party complies with the conditions precedent under the statute. The Court concluded that certified mail was not a condition precedent because it only served to substantiate that the principal contractor actually received written notice. The Court construed the act liberally because Congress enacted the act to provide relief for materialmen. Therefore, when the defendant conceded that it received written notice, but contended that the written notice failed to comply with the technical requirement that notice be served by certified mail,[2] it defied logic and common sense to deny recovery to the subcontractor. As the Court stated:

> We think that the purpose of this provision [notice by certified mail requirement] as to manner of service was to assure receipt of the notice, *not to make the described method mandatory so as to deny right of suit when the required written notice within the specified time had actually been given and received.* In the face of such receipt, the reason for a particular mode of service fails. It is not reasonable to suppose that Congress intended

material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, . . . or in any manner . . . .

[2] The defendant also argued that the contents of the notice were inadequate. The Supreme Court did not address this issue.

to insist upon an idle form. Rather, *we think that Congress intended to provide a method which would afford sufficient proof of service when receipt of the required written notice was not shown.* [*Fleisher, supra* at 19. Emphasis added.]

I agree and believe that *Fleisher* requires the *subcontractor to prove that the principal contractor received written notice within the time prescribed by the statute* and not merely that the principal contractor had notice. In my opinion, *Fleisher* only excuses compliance with the *certified mail* requirement when a genuine issue of material fact does not exist regarding whether the principal contractor received written notice within the time prescribed by the payment bond statute.

## II

Initially, I agree with the majority that United States Supreme Court, federal court, and Michigan Supreme Court decisions decided after *Fleisher* have interpreted either the notice provision of the Miller Act or MCL 129.207; MSA 5.2321(7) as requiring compliance with four prerequisites.[3] I agree with the majority as to the substance of the second,[4] third, and fourth elements. However, I disagree with the majority's recitation of the first element and its application to the facts of the instant case.

[3] The majority states that the statute requires that "[f]irst, a claimant must prove that the principal contractor actually received notice. Second, the notice must relate 'the nature of the materials being furnished or to be furnished, or labor being performed or to be performed and identify[ ] the party contracting for such labor or materials and the site for the performance of such labor or the delivery of such materials . . . .' Third, the notice sent must have been written. Fourth, the notice must have been received within the time limits prescribed by the statute." *Ante,* p 382.

[4] The appeal in the instant case does not involve the second element. However, the parties should be allowed to address this issue at the trial on remand.

With regard to the third element, I agree that the claimant must send *written* notice. In *People ex rel F Yeager Bridge & Culvert Co v Cooke Contracting Co,* 372 Mich 563; 127 NW2d 308 (1964), this Court denied recovery to a claimant that did not send *written* notice. As this Court noted, "[m]ere knowledge by a surety that a certain party had furnished materials is insufficient notice." *Id.* at 565. See also *Charles W Anderson Co v Argonaut Ins Co,* 62 Mich App 650; 233 NW2d 691 (1975). Moreover, numerous federal decisions also have interpreted the Miller Act and *Fleisher* as requiring *written notice. United States ex rel Fordham v P W Parker, Inc,* 504 F Supp 1066, 1070, n 3 (D Md, 1980); *United States ex rel Joseph T Richardson, Inc v EJT Construction Co, Inc,* 453 F Supp 435, 441, n 8 (D Del, 1978); *United States ex rel Excavation Construction, Inc v Glenn-Stewart-Pinckney Builders & Developers, Inc,* 388 F Supp 289, 296-297 (D Del, 1975); cf. *United States ex rel Field & Associates, Inc v Globe Indemnity Co,* 223 F Supp 121 (SD Ohio, 1962); *United States ex rel Tecot Electric Supply Co v New Amsterdam Casualty Co,* 185 F Supp 316 (ED Pa, 1960); *United States ex rel Old Dominion Iron & Steel Corp v Massachusetts Bonding & Ins Co,* 272 F2d 73 (CA 3, 1959) (actual notice received by the general contractor from an extraneous or third party was insufficient). As the *Glenn-Stewart* court stated:

> The purpose for the statutory requirement that the notice be in writing is to prevent misunderstanding between the parties and to afford certain minimal evidence of communication between the parties. *Coffee v United States* [*ex rel Gordon*], 157 F2d 968, 969 (CA 5, 1946) and *Apache Powder Co v Ashton Co,* 264 F2d 417, 421 (CA 9, 1959). Hence, the elimination of a requirement of any written

form of notice in a case where the receipt and content of notice is disputed would tend to emasculate the clear intent of the statute to avoid such disputes. See *United States [ex rel Charles R Joyce & Sons, Inc] v F A Baehner, Inc,* 326 F2d 556, 558 (CA 2, 1964).

Excavation argues that Mallory's testimony provides undisputed evidence that sufficient timely notice was given and that a written notice supplementing Mallory's testimony became unnecessary. Even if the Court were able to disregard the persuasive list of cases cited above which hold that *written* notice is a strict condition precedent to bringing suit under the Act, the Court would nevertheless reject Excavation's argument. In this case written notice would confirm or deny Mallory's supposition that she was told the amount of the Feinman bill. Written notice would evidence the nature of the communication and shed light on the context in which any information about the claim was given. It would indicate whether or not Mallory was justified in her conclusion that the telephonic conversation was intended merely as an effort by Garner to solicit Glenn-Stewart's aid in Excavation's attempts to contact Feinman and could in no possible way be interpreted as notice to Glenn-Stewart of a materialman's and supplier's claim. Thus, even without meeting Excavation's argument that the notice need not indicate an intent by the use plaintiff to look to the defendant for payment, written notice serves a useful purpose. Of course, if articulation of such intent were found to be required, written notice would serve the additional purpose of supplying notice or lack of notice of such intent.

[7] Finally, a number of courts have expressly rejected Excavation's argument that all the statute requires with respect to notice is that the general contractor have knowledge of the claim regardless of how that knowledge is acquired. In *Bowden [v United States ex rel Malloy]*, 239 F2d [572,] 577 [(CA 9, 1956),] the use plaintiff argued that since a letter from a subcontractor to a gen-

eral contractor gave the general contractor all the information which it would have obtained if the use plaintiff had given the general contractor the written notice required by statute. The court rejected this "knowledge of the general contractor" theory stating:

"no rule of liberality in construction can justify reading out of the statute the very condition which Congress laid down as prerequisite to the cause of action" at 577.

I agree. The claimant must send notice in writing.

I also concur with the majority's recitation of the fourth element, specifically, that the claimant must send *timely* written notice. In *People ex rel Wheeling Corrugating Co v W L Thon Co,* 307 Mich 273; 11 NW2d 886 (1943), this Court denied recovery to a claimant who conceded that it sent written notice after expiration of statutorily proscribed time limits of the notice provision. I agree. *Timely* written notice is a condition precedent under MCL 129.207; MSA 5.2321(7).[5]

However, the issue in the instant case focuses upon this Court's interpretation and application of the first element. The majority concludes the first element requires that "a claimant must prove that the principal contractor actually received notice." *Ante,* p 382. According to the majority, even though the statute specifically requires a claimant to send "[e]ach notice . . . by certified mail," a claimant must only prove timely receipt of written notice. The majority contends that the Legislature

[5] Furthermore, the federal decisions interpreting *Fleisher* and the Miller Act also require compliance with statutorily proscribed time limitations. As the United States Court of Appeals for the First Circuit stated succinctly: "The requirement that notice must be given to the principal contractor within the ninety-day period is mandatory and is a strict condition precedent to the existence of any right of action upon the principal contractor's bond. *Fleisher Engineering & Construction Co v United States* . . . ." *United States ex rel John D Ahern Co, Inc v J F White Contracting,* 649 F2d 29, 31 (CA 1, 1981).

enacted the certified mail requirement for the sole purpose of ensuring compliance with the statute's more important condition, the written requirement. I do not agree with either the majority's recitation of the first condition under the notice provision, or the majority's application of this element to the facts of the instant case. I disagree for several reasons that this Court should ignore completely the statute's directive that "notice shall be served by . . . certified mail . . . ."

First, while I agree that this Court should look to *Fleisher* for guidance in the instant case, I disagree with the extent to which the majority relies upon and expands *Fleisher.* In *Fleisher,* the United States Supreme Court excused the claimant's compliance with the certified mail requirement because the principal contractor conceded that it had received timely written notice by regular mail. However, the Court never intimated that it intended to excise the certified mail requirement from the statute. I agree and decline to join the majority's erasure of the certified mail requirement from MCL 129.207; MSA 5.2321(7).

Second, the majority justifies overlooking the certified mail requirement on the grounds that "[h]ad the Legislature desired a procedure whereby it could conclusively be established that defendant received plaintiff's notice, it would have required notice be sent certified mail with return receipt requested." *Ante,* p 386. I do not agree. This Court should not ignore a statutory requirement upon the basis of our belief that the Legislature could have placed more exacting language within a given statute.[6]

---

[6] Although the majority's argument might be appropriate if it presented this argument to the Legislature in an effort to change the current statutory language, the argument does not address the issue before the Court today: specifically, whether a claimant must comply with the unambiguous terms of the payment bond statute.

Third, I disagree with the lack of importance the majority places upon the certified mail requirement. Unlike the majority, I believe the Legislature enacted each of the requirements in the payment bond statute for an equally important purpose. In this regard, the certified mail requirement serves two important functions: first, as recognized by the majority, to ensure timely receipt of written notice, and, second, to eliminate disputes between contractors and subcontractors over whether the subcontractor sent and the principal contractor received timely written notice. Thus, while I agree with the majority that each of the requirements under the payment bond statute has a "substantive purpose," I disagree with the conclusion that the statute's "timely" and "written" notice requirements are any more "substantive" than the certified mail requirement. I am persuaded that each serves an important purpose in ensuring that a principal contractor received notice. This Court should not arbitrarily ignore one prerequisite over another.

Fourth, the justification advocated by the majority for ignoring the certified mail requirement also supports an interpretation of the payment bond statute which the majority specifically rejected, namely, the statute only requires that "the principal contractor [had] notice."[7] The majority contends that, "the ultimate purpose of the public works bond act [is] the protection of subcontractors and suppliers of materials," and therefore, this Court should ignore the "technical" certified mail requirement. However, if the majority correctly argues that this Court should overlook one statutory requirement in the interest of protecting subcontractors and materialmen, then it would

[7] Justice LEVIN's separate opinion seems to adopt a variation of this interpretation of MCL 129.207; MSA 5.2321(7).

seem to follow that this Court should ignore the other statutory conditions under the appropriate factual circumstances—anytime the claimant alleges that the principal contractor had notice. Otherwise, as the majority contends in rejecting the certified mail provision as a prerequisite to recovery under the payment bond statute, a principal contractor could avoid an otherwise valid claim solely because the claimant failed to notify the principal contractor through the proper medium. Rather than adopt an interpretation of the payment bond statute replete with inconsistencies, I prefer to adhere to an interpretation which considers and balances the importance of each statutory requirement.

Moreover, this Court's primary goal in interpreting MCL 129.207; MSA 5.2321(7) is to give effect to the intent of the Legislature. As this Court stated in *Dussia v Monroe Co Employees Retirement System*, 386 Mich 244, 248; 191 NW2d 307 (1971):

> The words of a statute, however, should not be construed in the void but must be read together to effectuate the intention of the legislature. . . . The general rule of statutory construction was stated by this Court in *Grand Rapids v Crocker* (1922), 219 Mich 178 [182-183; 189 NW 221]:
>
> "There seems to be no lack of harmony in the rules governing the interpretation of statutes. All are agreed that the primary one is to ascertain and give effect to the intention of the legislature. All others serve but as guides to assist the courts in determining such intent with a greater degree of certainty. If the language employed in a statute is plain, certain and unambiguous, a bare reading suffices and no interpretation is necessary. The rule is no less elementary that effect must be given, if possible, to every word, sentence and section. To that end, the entire act must be read, and the interpretation to be given to a particular

word in one section arrived at after due considera-
tion of every other section so as to produce, if
possible, a harmonious and consistent enactment
as a whole." [See also *In re Forfeiture of $5,264*,
432 Mich 242, 248; 439 NW2d 246 (1989).]

The legislative history of MCL 570.102; MSA
26.322, the predecessor of MCL 129.207; MSA
5.2321(7), indicates that as originally enacted a
claimant only had to provide written notice before
making a claim for payment. The act did not
contain the additional thirty-day notice require-
ment at issue in the instant case. 1905 PA 187. In
1927, the Legislature amended the notice provision
so as to require a claimant to provide written
notice within sixty days from furnishing the last
materials, supplies, or labor. The Legislature did
not adopt the thirty-day provision. 1927 PA 167.
However, in 1963, the Legislature not only in-
creased the sixty-day written notice requirement
to ninety days, but it also enacted the additional
thirty-day written notice requirement and the re-
quirement that the subcontractor furnish notice by
certified mail. 1963 PA 213, MCL 129.207; MSA
5.2321(7). Thus, while on the one hand I agree that
this Court should construe the act liberally be-
cause its overall salutary purpose is to protect
subcontractors and materialmen, on the other
hand, the evolution of the act and its unambiguous
terms[8] also evince a clear legislative intent to
provide the principal contractor with more protec-
tions through the certified mail provision and the
addition of the thirty-day notice requirement.[9] Un-

---

[8] Neither the plaintiff nor the majority argue that the statute is
ambiguous.

[9] I also find it significant that the Legislature has never withdrawn
or attenuated the requirement that the subcontractor provide *written
notice.*

like either the majority or concurring opinions,[10] rather than ignore one competing objective at the expense of the other, I prefer to strike an harmonious balance between the two.

Lastly, a comparison between notice provision of the Miller Act and MCL 129.207; MSA 5.2321(7) supports this conclusion. MCL 129.207; MSA 5.2321(7) differs from the Miller Act because the Miller Act permits notice by *either* registered mail *or in any manner* in which the United States Marshall is authorized to serve summons. On the one hand, I agree that we should look to the *Fleisher* and the Miller Act for guidance in the instant case. However, on the other hand, it is equally important to recognize that MCL 129.207; MSA 5.2321(7) provides a more stringent notice requirement that does not contemplate service by means other than certified mail. The Legislature presumably adopted the certified mail requirement to substantiate receipt of the written notice and, therefore, avoid disputes regarding whether the principal contractor received written notice.

Thus, while I agree with *Fleisher* that it makes little sense to adhere to the certified mail requirement when the contractor concedes it received written notice, it does not also follow that we should ignore completely the terms of the statute and require a trial on the merits every time a subcontractor contends that it sent timely written notice by means other than certified mail. I decline to adopt an interpretation of MCL 129.207; MSA 5.2321(7) that would emasculate the statute's

---

[10] For example, a careful review of the majority's analysis reveals that it permits what the statute intended to eliminate—disputes between contractors and subcontractors over whether the contractor received timely written notice. Under the majority's analysis, as long as the subcontractor alleges that it sent timely written notice, the case must proceed to trial because an issue of fact exists regarding whether the principal contractor received timely written notice.

certified mail requirement and render it nugato-
ry.[11]

III

Each of the cases interpreting the Miller Act or
MCL 129.207; MSA 5.2321(7) addressed a slightly
different facet of what constitutes a condition prec-
edent under either act. I am persuaded that along
with the legislative history of the notice provision,
together, they lead to the conclusion that, in the
absence of timely written notice by certified mail,
the subcontractor must prove that it sent and the
principal contractor actually received timely writ-
ten notice. Unlike the majority, I disagree that the
claimant can circumvent the certified mail re-
quirement and survive a motion for summary
disposition simply by alleging that it sent, and the
principal contractor received, timely written no-
tice. The issue before this Court, and before the
trial court on motion for summary disposition, was
not whether the principal contractor received the
timely written notice, but rather, whether it re-
ceived timely written notice *by certified mail*. I
would hold that if a genuine issue of material fact
exists regarding whether the principal contractor
received written notice within the time period
prescribed by the statute, the claimant cannot
recover on the payment bond.

As applied in the instant case, although Pi-Con
claims that it sent written notice by regular mail
within thirty days, Anderson has continuously
argued that it never received timely written no-
tice. Moreover, Pi-Con has not submitted any other
proof that Anderson received notice as required by

[11] Even under the Miller Act, the United States Supreme Court has
held that the general salutary language of the act cannot override
more specific provisions. *Clifford F MacEvoy Co v United States ex rel
Calvin Tomkins Co,* 322 US 102; 64 S Ct 890; 88 L Ed 1163 (1944).

MCL 129.207; MSA 5.2321(7). Under these circumstances, I would hold that Pi-Con cannot recover on the payment bond.[12]

### IV

Accordingly, I would hold that pursuant to MCL 129.207; MSA 5.2321(7), a claimant must send, and the principal contractor must receive, timely written notice by certified mail. I also would hold that *Fleisher* excuses compliance with the certified mail requirement *only* when a genuine issue of material fact does *not* exist regarding the issue whether the principal contractor received timely written notice under the payment bond statute. I would affirm the result of the Court of Appeals.

BRICKLEY and BOYLE, JJ., concurred with RILEY, C.J.

---

[12] For example, in absence of Anderson's admission that it received timely written notice, Pi-Con might have been able to prove receipt of timely written notice sufficient to avoid summary disposition if the mailgram sent by Anderson to Brian & Gregory on December 7, 1982, acknowledged that Anderson received written notice from Pi-Con, and had not merely expressed concerns about the quality of Pi-Con's workmanship.