**TRUSTEES FOR MICHIGAN LABORERS' HEALTH CARE FUND, Michigan Laborers' Vacation Fund, Michigan Laborers' Training Fund, State of Michigan Laborers' District Council Pension Fund, the Industry Advancement Program of the Labor Relations Division of the Associated General Contractors, Michigan Chapter, Inc., and Joseph Kaczmarek, individually,**

v.

**WARRANTY BUILDERS, INC., a Michigan corporation, and Seaboard Surety Company, a New York insurance corporation.**

**Civil Action No. 94–CV–40188–FL.**

United States District Court,
E.D. Michigan,
Southern Division.

March 29, 1996.

Steven F. Spender, Spender & Robb, Flint, MI, for Plaintiffs.

Mark M. Cunninghan, Kerr, Russell & Weber, Detroit, MI, for Defendants.

*MEMORANDUM OPINION AND ORDER*

NEWBLATT, Senior District Judge.

This action was brought by various ERISA-regulated pension funds ("Funds") and by Joseph Kaczmarek, an individual, to recover unpaid wages and fringe benefit contributions for labor performed by the Funds' beneficiaries and by Mr. Kaczmarek on a school construction project. Mr. Kaczmarek and the Funds' beneficiaries were employees of Warranty Builders, Inc., a sub-contractor for that project. Warranty Builders was a defendant to this action and a default judgment was entered against that party on October 18, 1994. Seaboard Surety Co. ("defendant") posted a payment bond for the project pursuant to the Michigan Public Works Act, M.C.L. § 129.201, *et seq.*, against which plaintiffs are attempting to recover the amounts not collectable from Warranty Builders.

Before the Court are cross-motions for summary judgment. Defendant filed its motion seeking dismissal or summary judgment on three grounds. Plaintiffs responded with their own summary judgment motion, arguing that those same issues required judgment in their favor. The Court shall address these issues seriatim.[1]

I.

Defendant first argues that plaintiffs lack standing to sue for Fringe Benefit Contributions against defendant's payment bond. Defendant argues that the statute defines claimants who are authorized to sue against the bond as those who furnish labor and material in the prosecution of work at a public works construction project for public educational institutions. M.C.L. § 129.207. Defendant asserts that this does not include unpaid fringe benefit contributions owed pursuant to a collective bargaining agreement. In support of its argument, defendant relies upon *Operating Engineers Local 324 Health Care Plan, et al. v. Sentry Ins.*, 654 F.Supp. 191 (E.D.Mich.1985). While that case is directly on point, the Court finds as argued by

plaintiffs, that the reasoning is not persuasive.

Based upon *Sentry Ins.*, defendant argues that: (1) the Michigan statute must be strictly construed; (2) the fund trustees are not proper claimants under the statute as strictly construed; and (3) fringe benefits are not "wages" and, therefore, are not recoverable under the statute. The problem is that the reasoning in *Sentry Ins.* is conclusory and does not deal with the law either as developed by the Michigan courts or as set forth in the statute.

It is true that the Michigan Court of Appeals has held that the *notice provisions* of the Michigan Public Works Act should be strictly construed. Nevertheless, the Michigan Supreme Court has not followed this rule of the law, and in both *Pi-Con, Inc. v. A.J. Anderson Const. Co.*, 435 Mich. 375, 458 N.W.2d 639 (1990) and *Kammer Asphalt Paving Co. v. East China Twp. Schools*, 443 Mich. 176, 504 N.W.2d 635 (1993), has ignored the Court of Appeals' pronouncements and analyzed the Michigan statute with reference to the U.S. Supreme Court's treatment of the federal Miller Act, 40 U.S.C. § 270a, *et seq.*, holding that the state statute should be liberally construed. *See Pi-Con*, 435 Mich. at 380–82, 458 N.W.2d 639 (substantial compliance with notice requirements sufficient to perfect action on construction bond); *Kammer*, 443 Mich. at 195–97, 504 N.W.2d 635 (acknowledging similarity between M.C.L. § 129.207 and Miller Act and analyzing state statute in light of federal treatment of Miller Act).

Furthermore, the term "wages"—construed by defendant and by the court in *Sentry Ins.* as not including fringe benefit contributions—does not even appear in the state statute. Even strictly construed, the statute would allow Mr. Kaczmarek to sue for recovery of sums due in compensation for his labor, including both wages and the employer contributions owed to the fringe benefits fund.

In its response brief, defendant disingenuously argues that by defining "labor and material" as including certain specified mate-

---

1. The facts of this case are not in dispute and, therefore, the Court will refer to relevant facts only as necessary for disposition of these motions.

rials, the statute thereby precludes recovery for any compensation other than wages. Defendant's response brief at 2. The problem is that the statute does not define compensation due for labor performed, but rather provides a non-exclusive list of items that are to be recoverable as materials. *See* M.C.L. § 129.206. This does not preclude the inclusion as compensation of employer contributions to a fringe benefits fund as required under the laborers' collective bargaining agreement.

Finally, although defendant argues the irrelevance of U.S. Supreme Court analysis of the federal Miller Act, the Court finds the high court's reasoning to be persuasive. In application of the federal Miller Act, the Supreme Court has held that trustees can recover employer contributions. *United States v. Carter*, 353 U.S. 210, 220–21, 77 S.Ct. 793, 798–99, 1 L.Ed.2d 776 (1957). In *Carter*, the Supreme Court faced the question as to whether a fund trustee could collect unpaid fund contributions from a contractor on a public construction project. The statutory scheme applicable therein provided that:

before any contract exceeding $2,000 for the construction of any public work of the United States is awarded to any person, such person shall furnish to the United States a payment bond with a satisfactory surety "for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract...." 49 Stat 793, 40 USC [sic] § 270a(2). Section 2(a) [ ... ] provides that "Every person *who has furnished labor or material* in the prosecution of the work provided for in such contract ... and who has not been *paid in full* therefor ... shall have the right to sue on such payment bond ... for the sum or sums *justly due him*...." (Emphasis supplied.) 49 Stat 794, 40 USC [sic] § 270b(a).

*Carter*, 353 U.S. at 215, 77 S.Ct. at 796.

The Court held that due to its remedial nature the Miller Act "is entitled to a liberal construction and application in order to effectuate the Congressional intent to protect those whose labor and materials go into public projects." *Id.* at 216, 77 S.Ct. at 796 (quoting *Clifford F. MacEvoy Co. v. United*

*States*, 322 U.S. 102, 107, 64 S.Ct. 890, 893, 88 L.Ed. 1163 (1944)). The Court noted, however, that a surety's liability is not without limitation; and while the surety "must make good the obligations of a defaulting contractor to his suppliers of labor and materials," the courts cannot ignore the plain meaning of words of limitation which also comprise part of the statutory scheme. *Id.* at 216–17, 77 S.Ct. at 797.

That said, the Court held that:

The Act ... does not limit recovery on the statutory bond to "wages." ... [C]ontributions to the fund were part of the consideration Carter agreed to pay for the services of laborers on his construction jobs. The unpaid contributions were a part of the compensation for the work to be done by Carter's employees.... Not until the required contributions have been made will Carter's employees have been "paid in full" for their labor in accordance with the collective-bargaining agreements.

*Id.* at 217–18, 77 S.Ct. at 797. The Court noted that until Carter's employees were "paid in full," "the Miller Act will not have served its purpose. *Id.* at 218, 77 S.Ct. at 797.

The Court further held that the trustees had standing to collect the delinquent employer contributions for two reasons. *Id.* at 218–20, 77 S.Ct. at 797–99. First, the trustees' relationship to the employees was created by the labor agreements and the trust agreement and, akin to an assignment, gave to the trustees the exclusive right to enforce payment of contributions. *Id.* at 220, 77 S.Ct. at 798–99. Second, the trustees of the fund were not seeking to recover the unpaid contributions on their own accord, but were doing so on behalf of the fund's beneficiaries, who were the individuals that performed the labor. *Id.* As the Court had held, the employees would not be "paid in full" until the contributions had been paid, *id.* at 218, 77 S.Ct. at 797, and the contributions to the fund were "in substance as much 'justly due' to the employees who have earned them as are the wages payable directly to them in cash." *Id.* at 220, 77 S.Ct. at 798.

The Court finds this reasoning persuasive and believes it should be applied in interpretation of the Michigan statute which is substantially similar to the federal statute. *See Pi–Con*, 435 Mich. at 381, 458 N.W.2d 639. The state statute requires that before any contract for construction of a public building is awarded, the principal contractor must furnish a payment bond, M.C.L. § 129.201, the purpose of which is "solely for the protection of claimants ... supplying labor or materials to the principal contractor or his subcontractors in the prosecution of the work provided for in the contract," M.C.L. § 129.203. The statute further provides that "[a] claimant who has furnished labor or material in the prosecution of the work provided for in such contract ... and who has not been *paid in full* therefor ... may sue on the payment bond for the amount ... unpaid at the time of institution of the civil action, [and] prosecute such action to final judgment for the sum *justly due* him...." M.C.L. § 129.206 (emphasis added).

■ As the Michigan Supreme Court has in the past construed the state statute liberally and has relied upon the United States Supreme Court's analysis of the federal Miller Act, the Court finds that the Michigan Supreme Court would resolve the issues discussed herein consistent with *Carter*. Therefore, the Court holds that plaintiffs do have standing to sue under the state statute, to recover as compensation "justly due", unpaid fringe benefit contributions owed pursuant to contract between the contractor and its union employees.

## II.

■ Defendant next argues that plaintiffs failed to comply with the statutory notice requirements, which precludes them from making a claim against the payment bond. Plaintiffs argue in response that where the bonding contract itself provides for less stringent notice provisions than does the statute, the bond provisions must control. The Court agrees with plaintiffs.

To make a claim under the bond at issue in this case, the bonding contract requires that:

4.2 *Claimants who do not have a direct contract with the Contractor:*

1. Have furnished written notice to the Contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed....

There is no dispute that plaintiffs provided the proper notices within 90 days after having last performed labor as required under the express terms of the bond. Defendant, however, relies upon a further provision of the bond in arguing that plaintiffs also were required to provide notice within thirty days after commencement of labor:

13. When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and the provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not a common law bond.

Michigan law provides that:

... A claimant not having a direct contractual relationship with the principal contractor shall not have a right of action upon the payment bond unless (a) he has within 30 days after furnishing the first of such material or performing the first of such labor, served on the principal contractor a written notice, which shall inform the principal of the nature of the materials being furnished or to be furnished, or labor being performed or to be performed and identifying the party contracting for such labor or materials and the site for the performance of such labor or the delivery of such materials, and (b) he has given written notice to the principal contractor and the governmental unit involved within 90 days from the date on which the claim-

**476**

ant performed the last of the labor or furnished or supplied the last of the material for which the claim is made. . . .

M.C.L. § 129.207. Thus, the statute requires not only the ninety day notice contained within the bonding contract, but also requires notice to be given within thirty days after the commencement of labor or furnishing of materials.

Defendant argues that the statutory language, read in conjunction with the bonding contract, required plaintiffs to give notice not only within ninety days after plaintiffs' completion of work, but also within thirty days after commencement of work. Defendant contends that this additional requirement under the statute is in conflict with the contractual bond notice requirements and, therefore, is incorporated into the bonding contract, requiring plaintiffs to comply with the additional statutory, thirty day notice requirement.

In response to this argument, plaintiffs rely upon two cases in which the courts considered the present issue under nearly identical facts. In *Hub Electric Co., Inc. v. Gust Const. Co., Inc.,* 585 F.2d 183 (6th Cir.1978), and *Royalite Co. v. Federal Ins. Co.,* 184 Mich.App. 69, 457 N.W.2d 96 (1990), both the Sixth Circuit and the Michigan Court of Appeals held respectively that where the bond on a public construction contract provides for an expanded notice period, broader than that required by state law, notice within that period of time is sufficient and the statutory requirement of notice within thirty days after commencement of labor or supply of materials is ineffectual. *Hub Electric,* 585 F.2d at 187–88; *Royalite,* 184 Mich.App. at 74–75, 457 N.W.2d 96. Defendant argues that these two cases do not apply to the present case and must be distinguished because the bonding contracts in both cases did not contain an incorporating clause such as paragraph 13 nor did they express an intent to construe the bond as a statutory bond. While these are significant differences, the reasoning of the courts in *Hub Electric* and *Royalite* are still persuasive and they control the outcome of this issue.

In reaching its conclusion, the court in *Hub Electric* reasoned:

While it is altogether sensible to hold that a surety may not restrict its own liability to defeat the statutory purpose of requiring a bond and that a contractor and a materialman may not unilaterally stipulate to waive a condition of the bond to the prejudice of the surety, there seems no good reason in Michigan law or in common sense to hold that the surety itself may not provide for more generous or less restrictive coverage than the minimum required by the statute. . . . We therefore hold that *the surety by its bonding contract may agree to accept a greater liability than that required under the Michigan bonding statute,* although for reasons of public policy it may not contract for less. *The statute specifically provides that the payment bond is solely for the benefit of the claimants, and nothing suggests that the Act was intended to establish a ceiling as well as a floor upon the liability which a surety may undertake by contract.* Because the bond here provided only for the 90-day notice and the trial court has correctly held that the plaintiff had complied in all respects with the conditions of the bond as written, plaintiff is entitled to recover upon it.

585 F.2d at 187–88. Thus, if plaintiffs have complied with the notice provisions of the bonding contract, then the more restrictive provisions of the state statute do not preclude their recovery under the bond.

■ The question is whether the language of paragraph 13 of the bonding contract incorporates the thirty day notice requirement of the Act. The Court finds that it does not.

■ Paragraph 13 of the bonding contract is a "savings clause" that would preserve the legality of the bond where its terms are in conflict with any statutory provisions. In the event of such a conflict, the requirements of the state law would supersede the conflicting provisions provided within the bonding contract. The statute requires that those performing labor or furnishing materials are provided at least thirty days after the commencement of their work to provide the required notice to the general contractor. The

bonding contract provision requiring notice within ninety days after completion of work satisfies this statutory minimum. Thus, the bonding contract in this case does not "conflict" with the state statute but rather complies with the requirements of a statutory bond. As the *Hub Electric* court indicated, the statutory notice requirements provide a floor, not a ceiling, and where a more generous period is provided by contract, that period is controlling. In expanding by contract its statutory responsibility under the bond, defendant has foregone any right to the thirty day notice required under the Act. *Hub Electric*, 585 F.2d at 187–88; *Royalite*, 184 Mich.App. at 74–75, 457 N.W.2d 96.

■ The savings clause of the bonding contract does not incorporate any state law provisions that happen to have been omitted from the contract; it only acts to delete any contractual provisions which are in conflict with the law and provides that the conflicting legal provisions are to supersede the contractual language. To construe the bonding contract to add the additional thirty day notice provision would allow the surety to profit by its own ill-drafted bond notice requirements. Where the bonding contract sets terms less stringent upon the laborer, the surety must be bound by its language, especially where that language is relied upon to the laborer's detriment. The case law cited by plaintiffs does apply to the present matter and does support such a holding. Therefore, the Court finds that plaintiffs did comply with the notice provisions required to make a claim under the bond.[2]

### III.

Defendant's final argument is that the Trustees' attempt to collect employer contri-

butions to ERISA funds through application of the Michigan Public Works Act is preempted by ERISA as "relating to" an ERISA plan. According to defendant, plaintiffs' attempt to recover contributions owed to the Funds is an attempt at civil enforcement of ERISA provisions, an activity superseded by the broad preemption contemplated under the Act. The Court disagrees.

In reality, the Public Works Act is a statute of general applicability, which in this case will operate to compel defendant's payment of full compensation to the Plans' beneficiaries' in the form of contributions due to the Plans under the terms of the beneficiaries' employment. This constitutes enforcement of the bonding contract only, not the Plans, and in no way interferes with the administration of the Plans.

■ As the Supreme Court recently has explained:

The federal statute ... controls the administration of benefit plans, *see* § 2, 29 U.S.C. § 1001(b), as by imposing reporting and disclosure mandates, §§ 101–111, 29 U.S.C. §§ 1021–1031, participation and vesting requirements, §§ 201–211, 29 U.S.C. §§ 1051–1061, funding standards, §§ 301–308, 29 U.S.C. §§ 1081–1086, and fiduciary responsibilities for plan administrators, §§ 401–414, 29 U.S.C. §§ 1101–1114. It envisions administrative oversight, imposes criminal sanctions, and establishes a comprehensive civil enforcement scheme. §§ 501–515, 29 U.S.C. §§ 1131–1145. It also preempts some state law. § 514, 29 U.S.C. § 1144.

Section 514(a) provides that ERISA "shall supersede any and all State laws insofar as they ... relate to any employee

---

**2.** At the hearing, defendant argued that it would be overly burdensome to require it to draft surety language specific to each state in which it conducts business. The Court finds this argument unpersuasive and irrelevant. The complaint is unconvincing because by doing business in a state, a company not only avails itself of the legal protections afforded by the state's laws but also must comply with the restrictions imposed thereby. It is not overly burdensome to expect a company which conducts business in multiple jurisdictions to review the controlling law before entering into a business contract.

Furthermore, the argument is irrelevant because the terms of the bonding contract at issue simply are not in conflict with the controlling state law. Defendant agreed to a notice period greater than that required by law; such a broadening of the claimants' rights does not frustrate the purpose of the agreement and there is no conflict to be resolved. There also is no prejudice to defendant in requiring it to comply with its own contractual terms, especially where the bonding contract was drafted by defendant.

benefit plan" covered by the statute, 29 U.S.C. § 1144(a)....

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* —— U.S. ——, ——, 115 S.Ct. 1671, 1674–76, 131 L.Ed.2d 695 (1995). In reevaluating the breadth of ERISA preemption, the Court referred to a previous opinion in which the Court held that " '[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.' " —— U.S. at ——, 115 S.Ct. at 1677 (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)). The state statute at issue in *New York Conference,* as the statute in the present case, contained no reference to an ERISA plan. *See Id.* Thus, as in *New York Conference,* there is only preemption if the statute has a "connection with" an ERISA plan. *Id.*

Faced with that same issue, in *New York Conference* the Supreme Court found that to define the phrase "connection with", or the equally vague statutory term "relate to", it was necessary to "go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.* After reviewing several of its previous pronouncements, the Court concluded that § 514(a) of ERISA preempts both state laws that mandate employee benefit structures or their administration and those that provide alternate enforcement mechanisms. *Id.* at ——, 115 S.Ct. at 1678. As to the latter, the Court referred to its earlier decision in *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

In *Ingersoll–Rand,* the Court found preempted a state-recognized, wrongful discharge cause of action which would "allow[ ] recovery when the plaintiff proves that the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund." 498 U.S. at 140, 111 S.Ct. at 483 (quotation omitted). The Court found that this Texas law was designed specifically to affect employee benefit plans and therefore

was preempted under § 514(a), 29 U.S.C. § 1144(a). *Id., citing Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 829, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988) (§ 514(a) preempts state laws which single out ERISA plans for different or special treatment). The Court explained that, under the state cause of action:

> in order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists and the employer had a pension-defeating motive in terminating the employment. *Because the court's inquiry must be directed to the plan, this judicially created cause of action "relate[s] to" an ERISA plan.*

*Ingersoll–Rand,* 498 U.S. at 140, 111 S.Ct. at 483. Preemption of the Texas law was obvious because, as interpreted by the Texas Supreme Court, there was no cause of action if there was no ERISA plan. *Id.*

In discussing the scope of ERISA preemption, the Court recognized that although broad, preemption under the federal statute had its limits:

> In *Mackey,* [*supra* ], the Court held that ERISA did not pre-empt a State's general garnishment statute, even though it was applied to collect judgments against plan participants. *Id.* [486 U.S.] at 841, 108 S.Ct. at 2191. The fact that collection might burden the administration of a plan did not, by itself, compel pre-emption.... [E]ven though a state law required payment of severance benefits, which would normally fall within the purview of ERISA, it was not pre-empted because the statute did not require the establishment or maintenance of an ongoing plan....

*Id.* at 139, 111 S.Ct. at 483 (citations omitted).

In the present case, the state statute at issue has no reference to an ERISA plan. The statute does not single out ERISA plans for special treatment, nor does its enforcement require the Court to direct its attention to an ERISA plan. To the contrary, it is a statute of general applicability that makes no reference to, and functions irrespective of, the existence of an ERISA plan.

The Michigan Public Works Act treats contributions due to an ERISA fund exactly as all other forms of compensation due a laborer or furnisher of materials on a public construction project. The statute does not interfere with nor require any administrative action of the Plans. It does not cause any additional expense to the Plans. To the extent that the statute operates to ensure payment of contributions to the Plans, it is incidental to its primary objective; in this case, to compel contractors on a public works project to pay their laborer's full compensation either directly or through a bond secured as provided by law. This law does not effect an ERISA plan in any meaningful way.

■ The Michigan Public Works Act is a statute of general applicability which causes the surety in this case to pay compensation as provided under the terms of its bonding contract. The statute neither "relates to" nor has a "connection with" an ERISA plan and plaintiffs' action to recover contribution payments from defendant's payment bond is not preempted by ERISA.

### IV.

For the foregoing reasons, the Court finds that plaintiffs have standing and are entitled to collect unpaid wages and fringe benefit contributions from the payment bond posted by Seaboard Surety Co pursuant to the Michigan Public Works Act. Accordingly, plaintiffs' motion for summary judgment (D.E. # 25) is GRANTED, defendant's motion for summary judgment (D.E. # 24) is DENIED, and Judgment shall be entered in favor of plaintiffs.

SO ORDERED.